Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 13, 2004      Decided November 26, 2004

No. 03-7079

UNITED STATES OF AMERICA, *EX REL.* RICHARD WILLIAMS,
APPELLANT

v.

MARTIN-BAKER AIRCRAFT COMPANY, LTD., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 97cv02699)

———

*Dean F. Pace* argued the cause and filed the briefs for appellant United States of America.

*Harvey G. Sherzer* argued the cause for appellee Teledyne Ryan Aeronautical. With him on the brief was *Scott Arnold*.

*Matthew H. Kirtland* argued the cause for appellee Martin-Baker Aircraft Company, Ltd. With him on the brief was *Stephen M. McNabb*.

———

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, TATEL, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case, a qui tam relator alleges that his former employer and one of its subcontractors violated the False Claims Act. The relator also alleges that by suspending and ultimately firing him, the employer violated the statute's protections for whistleblowers. The district court dismissed both claims—the false claims count for failure (among other things) to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), and the whistleblower count pursuant to Rule 12(b)(6) for failure to state a claim. We affirm the dismissal of the false claims allegations, but because the relator has stated a claim under the more liberal pleading rules that govern whistleblower allegations, we reverse the district court's dismissal of that claim and remand for further proceedings.

## I.

A plaintiff, either an individual or the United States, may state a claim under the False Claims Act ("FCA") by alleging that a defendant "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). FCA violators are liable for civil penalties and treble damages, *id.* § 3729(a), and private individuals, known as "relators," may bring civil actions in the United States government's name, *id.* § 3730(b)(1). The government may opt to take over the suit, but if (as here) it declines to do so, the relator may elect to proceed and collect a significant percentage of any recovery. *Id.* §§ 3730(b)(4), (d). Cases brought under the FCA are known as qui tam actions, an abbreviation of the Latin phrase, "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*"—or, "who pursues this action on our Lord the King's behalf as well as his own." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000).

The False Claims Act contains a "whistleblower" provision to protect qui tam relators, who are often either current or

former employees of FCA defendants. *See* 31 U.S.C. § 3730(h). In particular, the statute protects those who suffer retaliation because of their conduct "in furtherance of an action under [the FCA]." *Id.*

Appellee Martin-Baker Aircraft manufactures Naval Aircrew Ejection System ("NACES") seats for U.S. Navy aircraft. Appellee Teledyne Technologies, a Martin-Baker subcontractor, produces the "NACES sequencer," an electronic component of the ejection seat. Martin-Baker sells the seats to the Navy in production batches known as "lots." For each lot, Martin-Baker negotiates the price of the sequencer with Teledyne and then negotiates the price of the entire ejection seat with the Navy. Pursuant to the Federal Acquisition Regulations ("FAR"), which require government contractors to certify that "to the best of [their] knowledge and belief, the cost or pricing data [are] accurate, complete, and current as of the date of agreement on price," Teledyne had to certify to Martin-Baker the accuracy of the data for the sequencer, and Martin-Baker had to certify the same to the Navy for the ejection seat lots. *See* 48 C.F.R. § 15.403-4 (2002).

Appellant Richard Williams served as Martin-Baker's Chief Contract Negotiator from 1991 until the company fired him in July 1996. Williams's responsibilities included assessing the reasonableness of Martin-Baker's prime contracts with the Navy, which entailed analyzing Teledyne's cost and pricing data. Williams also participated in prime contract negotiations with the Naval Air Systems Command ("NAVAIR") contracting team.

In 1997, Williams filed a qui tam action against Martin-Baker, Teledyne, and another defendant not involved in this appeal. Twice amending his complaint, Williams served only the third version, i.e., the Second Amended Complaint (throughout this opinion, we shall refer to it as "the complaint"), on Martin-Baker and Teledyne. After five years and numerous extensions of time, the government chose not to intervene.

Although difficult to decipher, Count I of the complaint generally alleges that Martin-Baker and Teledyne violated

the FCA by failing to comply with certification requirements under the Truth in Negotiations Act and the accompanying FAR, which together regulate government contracts. Teledyne "acted in knowing deliberate ignorance and reckless disregard" of both the historical actual cost of the sequencer and the updated "accurate, complete and current cost and pricing data" for "at least NACES Sequencer Lots IV through XIII." *See* Compl. ¶ 9. Because Teledyne certified the data's accuracy to Martin-Baker, which then submitted the data to the Navy, Teledyne made "false statements and lies to the United States Government." *Id.* Teledyne also employed six "false methods to falsely support" the certificates, culminating in "coverup, deception and lies to the United States Government." *Id.* ¶ 11. According to Count I, Williams informed Martin-Baker of the sequencers' historical cost, but the company refused to use historical cost in negotiations with the Navy for at least Lots IX through XIII. *Id.* ¶¶ 14-15. Finally, "[e]ach and every Teledyne . . . false Certificate of Cost or Pricing Data and false invoice to Martin-Baker" is a false claim in violation of the FCA, resulting in a cost to the government of "at least $10 million." *Id.* ¶¶ 17-19.

In Count III (Count II is not at issue in this appeal), Williams alleges that in February 1996, he reported to his superior, Peter Hogg, that he had recommended to NAVAIR that it "continue to challenge" the cost or pricing data for Lot XI of the sequencer. *Id.* ¶ 40. Martin-Baker, Williams alleges, then "abruptly concluded" his mission with NAVAIR and "ordered [him] to return to Martin-Baker whereupon Williams was immediately suspended." *Id.* Williams claims that Martin-Baker then "forced" him to see "a company doctor . . . and then a specialist for a contrived mental illness," despite his personal physician's certification that he was fit to work. *Id.* ¶ 41. The company eventually fired Williams "in retaliation . . . on the contrived and false ground of indeterminate mental illness and mental incapacity." *Id.* ¶ 43. According to the complaint, Martin-Baker later "retracted its mental incapacity reason for the employment termination," writing a letter to his insurance company "con-

firming that its mental incapacity reason for the employment termination of Williams was false." *Id.* ¶ 44.

Following a hearing, the district court granted the companies' motion to dismiss, doing so with prejudice. Finding Count I's allegations "simultaneously excessively prolix and equally abstruse," the district court ruled the count violated Federal Rule of Civil Procedure 8. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, No. 97-2699 at 4 (D.D.C. May 15, 2003). The court found that Count I also failed Rule 9(b)'s heightened pleading requirement for fraud because it "alleges no specifics as to the time, place, or content of any deceptive submissions actually made to the government by either defendant, nor does [the plaintiff] identify any ostensibly culpable officials." *Id.* at 5. The district court dismissed Count III under Rule 12(b)(6), finding that it failed to state a claim for retaliation because Martin-Baker fired Williams in July 1996, eighteen months before he filed suit. *Id.* at 7.

Williams appeals the district court's dismissal of Counts I and III. We consider each in turn.

## II.

Federal Rule of Civil Procedure 8(a) provides that a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) requires that "[e]ach averment of a pleading shall be simple, concise, and direct." When a plaintiff alleges fraud, as when stating a claim under the FCA, *see United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002), Rule 9(b) requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." We review Rule 8(a) and 9(b) dismissals de novo. *See Kowal v. MCI Communications, Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (reviewing de novo a dismissal based jointly on Rule 8 and Rule 9(b)); *see also In re Dominguez*, 51 F.3d 1502, 1508 & n.5 (9th Cir. 1995) (reviewing de novo a finding of failure to comply with Rule 8). "[A]ll the allegations of material fact are taken as true and construed in the light most favorable to

the non-moving party . . . [and] it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Kowal*, 16 F.3d at 1278 (quoting *Wool v. Tandem*, 818 F.2d 1433, 1439 (9th Cir. 1987)) (alterations in original).

At the outset, we reject Williams's argument that Rule 8(a)'s requirement of a "short and plain statement" is the "antithesis" of Rule 9(b). As we have explained,

> Rule 9(b) is not . . . to be read in isolation from other procedural canons. As Professor Moore notes, "[t]he requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings should contain a 'short and plain statement of the claim or defense' and that each averment should be 'simple concise and direct.' "

*United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981) (quoting 2A J. Moore, Federal Practice ¶ 9.03, at 9-28 (2d ed. 1980)) (footnote omitted). Combining Rules 8 and 9(b), we require that "the pleader . . . state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal*, 16 F.3d at 1278 (quoting *Joseph*, 642 F.2d at 1385); *see also Totten*, 286 F.3d at 552. We also require pleaders to identify individuals allegedly involved in the fraud. *See Joseph*, 642 F.2d at 1385-86.

Rule 9(b)'s particularity requirement serves several purposes. It "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude . . . . And because 'fraud' encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response." *Joseph*, 642 F.2d at 1385 (footnotes omitted).

We agree with the district court that Count I fails Rule 9(b)'s particularity requirement. To begin with, the allegations regarding the "time . . . of the false misrepresentations"

are entirely inadequate. *See Kowal*, 16 F.3d at 1278. Several paragraphs nebulously allege that the period in question is "at least through 2002," but nowhere does the complaint allege a start date. *See, e.g.,* Compl. ¶¶ 5, 16, 17, 19-22. Not until his brief in this court did Williams tell us that Teledyne and Martin-Baker began their allegedly fraudulent activities in 1992 and 1995, respectively. This comes too late. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which we may take judicial notice."). Williams insists that requiring him to allege the dates "of all Martin-Baker and Teledyne vouchers [would require him] to plead *evidence* far beyond particularity." Williams Br. at 22. We need not address that contention, however, for the open-ended time span alleged in the complaint failed to give the two companies "sufficient information to allow for preparation of a response." *See Joseph*, 642 F.2d at 1385.

The complaint also fails to identify with specificity who precisely was involved in the fraudulent activity. *See id.* at 1385-86. The complaint repeatedly refers generally to "management" and provides a long list of names without ever explaining the role these individuals played in the alleged fraud—an especially surprising deficiency given that Williams worked for Martin-Baker and with Teledyne for five years. *See, e.g.,* Compl. ¶¶ 9, 11-13, 16, 21. This imprecision not only failed to give the companies sufficient information to answer the complaint, but it also subjected the named individuals to vague, potentially damaging accusations of fraud. *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001) (finding that an FCA claim lacked the requisite particularity under Rule 9(b) where, among other things, the plaintiff failed to identify the employees involved in the fraud).

Equally obscure is the "fact misrepresented." *See Kowal*, 16 F.3d at 1278. In some places, such as in paragraph 15, the complaint seems to allege that Martin-Baker's certificates of cost or pricing data were false because the company failed to

use historical actual costs during negotiations with the government. Yet we have found no case or regulation—nor has Williams pointed to any—requiring the use of such data *during negotiations*. Instead, aiming to put negotiating parties on equal footing by mandating disclosure of cost data, the FAR and TINA only require that contractors identify and make the information available to the government. *See, e.g., Hughes Aircraft Co.*, ASBCA No. 30144, 90-2 BCA ¶ 22,847, 1990 WL 42047 (1990) (stating that a contractor is not obligated to use cost data so long as the government has the option of analyzing the data). Having done so, negotiating parties need not reach agreement based on the disclosed data. *Id.*

Elsewhere, such as in paragraph 9, Williams appears to allege that Teledyne engaged in misrepresentation by failing to update the costs it did disclose. But when asked by the district court, "Are you alleging that they misrepresented what historical actual cost per sequencer was?," Williams's counsel answered "no." Counsel's response also undermines paragraph 11's allegation that Teledyne's failure to use historical cost data meant the company had employed fraudulent methods as a cover-up. Given counsel's admission that Teledyne did not misrepresent the data, what exactly did Teledyne need to "cover up"? Paragraph 11 provides no answer. Paragraph 11 suffers from other significant gaps: Only one of its six allegations includes a date and none names any involved individuals or mentions what was "retained or given up" as a result of the fraud. *Kowal*, 16 F.3d at 1278.

According to Williams, paragraph 10 alleges precise "false claims calculations." That paragraph states,

> The NACES Sequencer proposed and negotiated Certificates of Cost and Pricing Data by Defendants Teledyne . . . and Martin-Baker were false in violation of the False Claims Act, . . . *inter alia* false certification of the difference between the contract unit prices and the historical actual cost for the NACES Sequencer Lots IV through XIII without limitation thereof.

Following these allegations, paragraph 10 includes calculations of the difference between the contract price per sequencer and historical actual cost per sequencer. *See* Compl. ¶ 10. Yet paragraph 10 nowhere alleges how these calculations amount to "false certification of the difference between the contract unit prices and the historical actual cost." What, then, did Teledyne misstate in its certification? And what did the government "retain[ ] or give[ ] up" due to the alleged fraud? *See Kowal*, 16 F.3d at 1278. Paragraph 10 provides no answer.

Perhaps anticipating difficulties under this circuit's case law, Williams relies on *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 8-9 (D.D.C. 2003), a district court decision that relaxes the particularity requirements for qui tam plaintiffs. We need not decide whether that decision comports with circuit law, for Williams's complaint fails even its less strict standard. In *Harris*, the district court found that the relator pled with sufficient particularity because the complaint alleged a "span of time" instead of exact dates, named individual defendants, noted where the fraud took place, alleged facts that exemplified the fraudulent scheme, and used a statistical sample to describe the fraudulently gained benefit. *Id.* By contrast, Williams's complaint alleges no start date, names a laundry list of individuals without specifying their relation to the fraudulent scheme, *see, e.g.*, Compl. ¶¶ 9, 13, alleges a place only twice, *id.* ¶¶ 12, 14, and sets forth no facts that exemplify the purportedly fraudulent scheme, *see, e.g., id.* ¶¶ 10, 15.

Williams contends that his complaint lacks specificity because Martin-Baker and Teledyne have possession of the critical documents. It is certainly true that qui tam plaintiffs, frequently former employees of the parties they sue, often have difficulty getting access to their former employers' documents. Accordingly, this circuit provides an avenue for plaintiffs unable to meet the particularity standard because defendants control the relevant documents—plaintiffs in such straits may allege lack of access in the complaint. *Kowal*, 16 F.3d at 1279 n.3. Neither in his complaint nor before the district court did Williams make any such allegations. He

advances lack of access for the first time here—far too late for us to consider such a claim. *See United States v. Hylton*, 294 F.3d 130, 135 (D.C. Cir. 2002) (stating that an argument not made in the "lower tribunal is deemed forfeited"). Indeed, instead of explaining to the district court that lack of access to key documents thwarted his compliance with Rule 9(b), Williams told the court that he could replead the complaint with particularity if given leave to amend. Moreover, Teledyne and Martin-Baker assert, and Williams never denies, that he and the government reviewed "thousands of pages of documents" produced by the two companies at the government's request. Martin-Baker Br. at 3; Teledyne Br. at 28. Nor did Williams challenge counsel for Teledyne's assertion at oral argument that the company provided "all of the contract documentation" to Williams and the government. Williams's offer to replead with particularity together with his participation in the government's five-year examination of reams of documents provided by the companies suggests that lack of access was not a real barrier for this qui tam relator.

In sum, although Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years, defendants must be able to "defend against the charge and not just deny that they have done anything wrong." *Lee*, 245 F.3d at 1052 (internal quotation marks omitted). Because Count I failed to provide Martin-Baker and Teledyne this opportunity, we agree with the district court that Count I ran afoul of Rule 9(b)'s particularity requirement. We thus have no need to review the district court's separate conclusion that Count I also fails Rule 8(a).

One last point. The district court dismissed the complaint with prejudice. Williams asks that should we agree with the district court that Count I fails Rule 9(b), we remand with instructions to allow him to amend the complaint. Reviewing the district court's dismissal with prejudice for abuse of discretion, *see Kowal*, 16 F.3d at 1279, we decline to do so.

After Martin-Baker and Teledyne moved to dismiss, Williams told the district court that "if this Honorable Court

11

would desire a complaint comprised of hundreds of pages of evidence and exhibits, Plaintiff will be pleased to obey." At the hearing, Williams asked for leave to amend "to write a massive complaint with the particularity that perhaps might satisfy all concerned," offering to draft "a 100-page complaint if the court pleases." Yet Williams never filed a motion to amend, nor did he proffer the contents of a potential fourth version of this count beyond what we have just described.

"While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Kowal*, 16 F.3d at 1280 (quoting *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 285, 299 (D.C. Cir. 1993)) (internal quotations and alterations omitted). In *Confederate Memorial*, the plaintiffs requested leave to amend their complaint, but never tendered a proposed amendment. 995 F.2d at 297. On appeal, plaintiffs said they could prove facts entitling them to recovery, but provided no specifics. Since they never indicated "the particular grounds on which amendment is sought," we held that they failed properly to request an opportunity to amend. *Id.* at 299. As in *Confederate Memorial*, Williams's vague offer to add hundreds of pages and write a "massive complaint" tells us nothing about how such added verbiage would yield a successfully stated FCA claim.

Given Williams's failure to articulate to the district court anything more than a bare request to amend his complaint, we affirm the dismissal of Count I with prejudice.

### III.

Turning to Count III, we review de novo the district court's dismissal of that count for failure to state a claim under Rule 12(b)(6). *See Kowal*, 16 F.3d at 1276. Unlike Count I, Count III is unconstrained by the fraud pleading standard; its allegations need satisfy only Rule 8's general pleading requirements. Furthermore, on a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "the complaint is construed liberally in the plaintiffs' favor, and we grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Id*. Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The FCA's whistleblower protections entitle

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, . . . to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). As we explained in *United States ex rel. Yesudian v. Howard University*, to prevail on a whistleblower claim, an employee must demonstrate that:

> (1) he engaged in protected activity, that is, "acts done . . . in furtherance of an action under this section"; and (2) he was discriminated against "because of" that activity. To establish the second element, the employee must in turn make two further showings. The employee must show that: (a) "the employer had knowledge the employee was engaged in protected activity"; and (b) "the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity."

153 F.3d 731, 736 (D.C. Cir. 1998) (quoting S. Rep. No. 99-345, at 35, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5300).

In dismissing Count III, the district court found that Williams could not have been engaged in "protected activity" because Martin-Baker fired him 18 months before he filed his FCA complaint. *See Williams*, No. 97-2699 at 7 (D.D.C. May 15, 2003). Martin-Baker does not seriously defend this disposition, and for good reason. In *Yesudian*, we reversed the

district court for "suggesting that [the relator's] activity was unprotected because he had not initiated a private suit by the time of his termination." 153 F.3d at 741. As *Yesudian* points out, Congress intended "to protect employees while they are collecting information about a possible fraud." *Id.* at 740. Thus, "it is sufficient that a plaintiff be investigating matters that reasonably could lead to a viable False Claims Act case." *Id.* (internal quotation marks omitted).

Martin-Baker argues that Williams has failed to allege that he engaged in "protected activity" as required by *Yesudian*. Because "Williams has not alleged any actions on his part beyond his ordinary job requirements in reporting or investigating potential government fraud and non-compliance with federal contract regulations," the company contends, it could not have known that he was engaged in "protected activity." Martin-Baker Br. at 34-35. Although this argument conflates *Yesudian*'s first two requirements—that the employee engage in "protected activity" and that the employer have notice—we read Martin-Baker's brief as raising only the latter. Though entitled "Williams Fails To Allege That He Engaged In 'Protected Activity' While Employed At Martin-Baker," section II.A of the company's brief deals only with lack of notice. *See Artis v. Greenspan*, 158 F.3d 1301, 1302 n.1 (D.C. Cir. 1998) (stating that issues not briefed are waived).

The standard for notice, as *Yesudian* explains, is flexible: "the kind of knowledge the defendant must have mirrors the kind of activity in which the plaintiff must be engaged." 153 F.3d at 742. "Unless the employer is aware that the employee is investigating fraud, . . . the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)." *Id.* at 744 (internal quotation marks and alterations omitted). Accordingly, as many circuits have held, and as we ourselves indicated in *Yesudian*, *id.* at 744-45, plaintiffs alleging that performance of their normal job responsibilities constitutes protected activity must "overcome the presumption that they are merely acting in accordance with their employment obligations" to put their employers on notice. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 568 (6th Cir. 2003) (denying whistleblower protection where plaintiff was

"simply performing his ordinary duties" when he told employer that certifications were illegal and that other companies had incurred FCA liability for similar acts); *see also United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522-23 (10th Cir. 1996) (finding no notice where plaintiff regularly communicated with her superiors about noncompliance as part of her job responsibilities). Thus, without "evidence that [the employee] expressed any concerns to his superiors other than those typically raised as part of a contract administrator's job," an employer could not be on notice that the employee was acting in furtherance of an FCA action. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952 (5th Cir. 1994).

Examining Count III's allegations under *Yesudian*'s flexible standard, we generally agree with Martin-Baker that Williams's activities fall within his responsibilities as Chief Contract Negotiator and so could not have placed Martin-Baker on notice. As Williams conceded both in his brief and at oral argument, he "did his job" when he informed Martin-Baker management of the results of his audits of Teledyne's data. Williams Br. at 10.

By the same logic, however, when an employee acts outside his normal job responsibilities or alerts a party outside the usual chain of command, such action may suffice to notify the employer that the employee is engaging in protected activity. *See Ramseyer*, 90 F.3d at 1522-23 (holding that plaintiff failed to satisfy notice prong where plaintiff communicated information about noncompliance to her superiors, but "gave no suggestion that she was going to report such noncompliance to government officials"); *Neal v. Honeywell Inc.*, 33 F.3d 860, 861, 864 (7th Cir. 1994) (upholding whistleblower claim where plaintiff told employer's legal counsel about fraud and counsel informed the government). Williams's advice to NAVAIR "to continue to challenge" Teledyne's cost or pricing data—Count III's sole allegation of protected activity—represents just this type of action. Instead of merely reporting his concerns about Teledyne up Martin-Baker's management chain, Williams went outside the company and alerted the government—the victim of any FCA violation. Indeed,

Williams went well beyond *Yesudian's* requirements for employees whose normal job functions include auditing responsibilities. *Yesudian* makes clear that such an employee need not "announce he ha[d] gone outside the institution," 153 F.3d at 743, but Williams did precisely that.

At oral argument, Martin-Baker insisted that Williams's statement to NAVAIR was in fact part of his job responsibilities. Martin-Baker might well be able to establish this proposition either at summary judgment or at trial, but at this stage of the proceedings—a Rule 12(b)(6) motion to dismiss—our job responsibilities require that we limit our consideration to the allegations in the complaint and resolve "[a]ll factual doubts . . . and all inferences . . . in favor of the plaintiff." *Tele-Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334-35 (D.C. Cir. 1985) (quoting *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C. Cir. 1984) (en banc)). Given this, we cannot intuit, as Martin-Baker would have us, that Williams's responsibilities as a contract negotiator for Martin-Baker included telling the government—the opposing negotiating party—to continue challenging the pricing data underlying his employer's contract. Indeed, Martin-Baker's swift suspension of Williams following his disclosure could lead a reasonable factfinder to conclude that management considered Williams's conversation with NAVAIR well beyond the scope of his responsibilities.

Citing a Fifth Circuit decision, Martin-Baker also argues that Williams failed to satisfy *Yesudian*'s notice requirement because the complaint never characterizes his concerns as involving "illegal, unlawful, or false-claims investigations." *See Robertson*, 32 F.3d at 952. Though *Yesudian* cites that decision, 153 F.3d at 744, we did not adopt the Fifth Circuit's view that an employee whose job responsibilities coincide with statutorily protected activity must incant talismanic words to satisfy the notice element, and joining several other circuits, we decline to do so here. *See McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 515 (6th Cir. 2000); *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996); *Neal*, 33 F.3d at 864. Not only does section

3730(h) nowhere require the use of such words, but as the Fourth Circuit has explained, "[N]otice can be accomplished by expressly stating an intention to bring a *qui tam* suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999). In this case, giving Williams the benefit of all inferences, we believe that a reasonable factfinder could conclude that once Williams informed Martin-Baker that he had told the Navy to continue challenging Teledyne's cost or pricing data, the company was "on notice that litigation [was] a reasonable possibility." *Id.*

Finally, we can easily dispose of Martin-Baker's argument that Williams fails *Yesudian's* causation requirement. By claiming that his suspension and termination occurred just after he disclosed the NAVAIR conversation to his superior, Williams has satisfactorily alleged that his protected activity caused Martin-Baker's retaliation.

## IV.

Because Williams's false claims allegations fail to meet the requirements of Rule 9(b), we affirm the district court's dismissal of Count I. But because Williams has sufficiently alleged a violation of the FCA's whistleblower provision, we reverse the district court's dismissal of Count III and remand for further proceedings.

*So ordered.*