**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2342**

RONALD P. YOUNG; RAMONA YOUNG,

        Plaintiffs – Appellants,

    v.

CHS MIDDLE EAST, LLC,

        Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge. (1:13-cv-00585-GBL-JFA)

Argued:  January 28, 2015                   Decided:  May 27, 2015

Before MOTZ, GREGORY, and WYNN, Circuit Judges.

Reversed and remanded by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Motz and Judge Gregory joined.

**ARGUED:** Robert Scott Oswald, THE EMPLOYMENT LAW GROUP, P.C., Washington, D.C., for Appellants.  John Kirk Train, IV, WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, Atlanta, Georgia, for Appellee.  **ON BRIEF:** Nicholas Woodfield, THE EMPLOYMENT LAW GROUP, P.C., Washington, D.C., for Appellants.  Julie C. Hall, WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC, Atlanta, Georgia; Carlos M. Recio, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

The False Claims Act's whistleblower provision prohibits retaliation "because of lawful acts done . . . in furtherance of an action" under, or otherwise "to stop 1 or more violations of," the False Claims Act. 31 U.S.C. § 3730(h). Plaintiffs Ronald and Ramona Young contend that they sufficiently alleged that their former employer, CHS Middle East ("CHS"), terminated them because they undertook lawful acts "in furtherance of an action" under, or otherwise "to stop 1 or more violations of," the False Claims Act. Id. Particularly in light of United States ex rel. Omar Badr v. Triple Canopy, Inc., 775 F.3d 628 (4th Cir. 2015), we agree and conclude that the district court erred in dismissing the Youngs' suit for failure to state a claim. Accordingly, we reverse.

I.

Accepting the facts pled as true, as we must on a motion to dismiss, CHS had a $61.5 million services agreement with the U.S. Department of State to provide medical services to non-military personnel in Iraq. The contract required CHS to "ensure" that its staff was "properly trained and certified." J.A. 99. Pursuant to that contract, CHS hired the Youngs, both experienced nurses, to work as "Medical Surgery Registered Nurses." Id.

3

When he began work in September 2011 at Forward Operating Base Shield in Iraq, Ronald Young noticed that CHS attempted to utilize expired medicine. He informed his supervisors that "using them was illegal" and "violated CHS' contractual requirements with the Department of State." J.A. 100. By November 2011, Ronald Young was transferred to Sather Air Force Base ("Sather"), where his critical care skills were needed.

Ramona Young also worked at Sather, beginning in October 2011, where she expressed concern "about the lack of equipment and properly trained medical personnel." J.A. 100. She informed a supervisor that such shortcomings were "totally misleading," put her nursing license "on the line," and amounted to a "breach of CHS's contract for properly trained and qualified staff." J.A. 100-01.

At a staff meeting, Ramona Young shared her concerns that Sather was "not properly staffed, [ ] did not have qualified staff, and that according to CHS's contract we would have . . . properly trained and qualified [staff]." J.A. 101. Both of the Youngs allegedly mentioned that the failings they witnessed were "a total breach of contract." J.A. 101. The Youngs observed various additional failings and escalated their concerns to CHS employees not stationed in Iraq.

The Youngs allege that "Mr. Young [] told [CHS's director of international operations] that 'CHS management at Sather is

4

defrauding the government.'" J.A. 104. The Youngs pled that Ronald Young told CHS's director of international operations that "CHS list[ed] emergency medical technicians as scrub technicians for surgery even though they had no surgical experience." Id. And "Mrs. Young emphasized 'the potential liability' of reporting false employee staffing at Sather to the State Department." Id.

The Youngs allege that CHS staff began treating them poorly because of their whistleblowing. On December 20, 2011, the Youngs contacted the State Department to raise their concerns regarding CHS. Two days later, CHS terminated the Youngs. The Youngs returned to the United States on December 24, 2011.

In July 2012, the Youngs filed this case in state court, and it was then removed to the Eastern District of Virginia. There, the district court granted CHS's motion to dismiss the Young's first amended complaint for failure to state a claim but permitted them to file a second amended complaint, which they did. On October 28, 2013, the court again granted CHS's motion to dismiss, this time with prejudice. The Youngs timely appealed from this dismissal, which we review de novo, construing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party, here the Youngs. Kendall v. Balcerzak, 650 F.3d 515, 522 (4th Cir. 2011).

5

II.

A.

The False Claims Act discourages fraud against the federal government by imposing liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Central to this case, the False Claims Act includes a whistleblower provision.

The whistleblower provision, which Congress broadened in 2009, prohibits retaliation "because of lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). In other words, among other things, it "protect[s] employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together." United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 739 (D.C. Cir. 1998).

To survive a motion to dismiss, plaintiffs bringing an anti-retaliation suit under the False Claims Act must plausibly allege that (1) they engaged in a protected activity; (2) the employer knew about these acts; and (3) the employer discharged them as a result of these acts. Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 866 (4th Cir. 1999). Notably, these allegations need pass only Civil Procedure Rule 8(a)'s

6

relatively low notice-pleadings muster.  See, e.g., <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1103 (9th Cir. 2008); <u>United States ex rel. Williams v. Martin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1259-60 (D.C. Cir. 2004).[1]

## B.

The sole element on which CHS based its motion to dismiss and on which the district court ostensibly dismissed the case[2] is the first: the requirement that the Youngs plausibly allege that they engaged in protected activity.  Applying the law to the second amended complaint, we conclude that the Youngs have plausibly alleged that element.

To survive CHS's motion to dismiss, the Youngs needed to plead that they engaged in protected activity, i.e., that they acted "in furtherance of an action under" the False Claims Act or undertook "other efforts to stop 1 or more violations" of the False Claims Act.  31 U.S.C. § 3730(h).  Protected activities include collecting information about a possible fraud, even before the plaintiff puts together "all the pieces of the puzzle."  <u>Mann v. Heckler & Koch Defense, Inc.</u>, 630 F.3d 338, 343-44 (4th Cir. 2010) (quotation marks and citation omitted).

---

[1] This contrasts with the higher Rule 9(b) standard that applies to straight-up Fraud Claims Act fraud claims.  <u>Id.</u>

[2] The district court stated its reasoning orally from the bench.

By contrast, protected activities exclude "those in which 'an employee . . . fabricates a tale of fraud to extract concessions from the employer, or . . . just imagines fraud but lacks proof.'" Id. (quoting Neal v. Honeywell Inc., 33 F.3d 860, 864 (7th Cir. 1994)).

In United States v. Triple Canopy, Inc., this Court recently shed additional light on what might qualify as protected activity. 775 F.3d 628. In Triple Canopy, the government alleged that a security contractor with primary responsibility for ensuring the safety of servicemen and women stationed at an airbase in a combat zone knowingly employed guards who were unable to use their weapons properly yet presented claims to the government for payment on those unqualified guards. Id. at 632-633. We reversed the dismissal of the claim, holding that a plaintiff successfully "pleads a false claim when it alleges that the contractor, with the requisite scienter, made a request for payment under a contract and withheld information about its noncompliance with material contractual requirements." Id. at 636. Logically, if making false implied staffing certifications to the government can constitute a False Claims Act violation, acts undertaken to, for example, investigate, stop, or bring an action regarding such false implied staffing certifications can constitute protected

8

activity for purposes of a retaliation claim. 31 U.S.C. § 3730(h).

Our review of the Youngs' second amended complaint leads us to conclude that they have plausibly pled the protected activity element. They alleged, for example, that under CHS's "$61.5 million contract with the U.S. State Department to provide medical services at medical facilities in Iraq," CHS was obligated to "[e]nsure that [certain personnel] are properly trained and certified prior to arrival in theater." J.A. 99. The Youngs alleged that "Mr. Young [] told [CHS's director of international operations] that 'CHS management at Sather is defrauding the government.'" J.A. 104. The Youngs pled that Robert Young told CHS's director of international operations that "CHS list[ed] emergency medical technicians as scrub technicians for surgery even though they had no surgical experience." Id. And "Mrs. Young emphasized 'the potential liability' of reporting false employee staffing at Sather to the State Department." Id.

In holding that these allegations fail to state a retaliation claim, the district court expressly relied on Glynn v. EDO Corp., 710 F.3d 209 (4th Cir. 2013). Importantly, Glynn predated our recent Triple Canopy decision, which bolsters the plausibility of the Youngs' protected activity allegations. Specifically, in light of Triple Canopy, the Youngs' falsified

9

staffing report allegations more clearly support their having been engaged in protected activity. Further, the retaliation at issue in Glynn predated Congress's broadening of 31 U.S.C. § 3730(h)(1) to capture not only acts done "in furtherance of an action" under, but also "other efforts to stop 1 or more violations" of, the False Claims Act. Finally, Glynn had reached summary judgment, when the plaintiffs had to proffer not just allegations but evidence, which they failed to do. By contrast, here, we are reviewing a decision on a motion to dismiss, and the Youngs' allegations alone are our focus.

At this stage, we are obligated to view only the Youngs' pleadings, and to view them generously in the Youngs' favor. Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP, 551 F.3d 305, 311 (4th Cir. 2009). Doing so, we conclude that the Youngs have sufficiently pled that they engaged in protected activity, i.e., that they acted "in furtherance of an action" under, or in an "effort[] to stop 1 or more violations of," the False Claims Act. 31 U.S.C. § 3730(h). While the Youngs' allegations may well be insufficient to state a False Claims Act fraud claim subject to Rule 9(b)'s heightened pleading standards, they make no such claim. Instead, they make only a retaliation claim subject to Rule 8(a)'s notice pleadings standard. And particularly in light of Triple Canopy, their allegations suffice to survive CHS's motion to dismiss.

10

III.

For the reasons explained above, the district court's dismissal of the Youngs' second amended complaint is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED