# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 25-7059**

**September Term, 2025**

FILED ON: MAY 11, 2026

UNITED STATES OF AMERICA, EX REL. PRECHELLE SHANNON, ET AL.,
 AND
PRECHELLE SHANNON,
APPELLANT

v.

BHG HOLDINGS, LLC, DOING BUSINESS AS BEHAVIORAL HEALTH GROUP, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00354)

———

Before: PAN and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered after oral argument on the briefs and the district court record. The Court has afforded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the district court's order be **AFFIRMED**.

\* \* \*

Prechelle Shannon sued her former employer BHG Holdings, LLC (d/b/a Behavioral Health Group). She alleged that BHG violated the False Claims Act and D.C. and Virginia anti-fraud statutes. The district court dismissed Shannon's complaint with prejudice. We affirm.

### I

BHG operates a network of outpatient opioid treatment and recovery centers in the United States. In November 2020, BHG hired Shannon to help manage two of its clinics, one in Virginia and the other in Washington, D.C. During her tenure, Shannon noticed what she believed were fraudulent practices. She reported those practices to her supervisors and later resigned from the company.

In November 2021, Shannon sued BHG in the District of New Jersey under the False Claims Act and several state anti-fraud statutes. That action was transferred to the District of Columbia. The United States declined to intervene. Shannon then amended her complaint.

As relevant here, Shannon alleged two fraudulent schemes. The first concerns BHG's administration of urine drug tests. Urine drug tests are "common laboratory test[s] conducted to determine whether a patient is taking drugs that might interfere with planned medical treatment, or to ensure that a patient in [a] recovery program is not abusing prescription or illicit drugs." Am. Compl. ¶ 44. According to Shannon, BHG "implemented a practice of designating certain patients as 'Code 1'" and issuing those patients "standing orders" to take urine drug tests "without regard to medical necessity." Id. ¶ 67. Patients designated as Code 1 were allegedly ordered to take "duplicative tests" up to "five times per week," and they would sometimes take "confirmatory drug tests regardless of the results of [their] initial screen" or even "skip[] the initial preliminary screening altogether." Id. ¶¶ 67–69. In an internal email, moreover, the Medical Director for BHG-D.C. expressed "concern[s]" that the Regional Director for BHG-D.C./Virginia "had instructed [the medical staff] to change the . . . urine tests to weekly tests for several groups," as the Medical Director believed that "weekly testing for all patient groups is not medically justifiable." Id. ¶ 71. Citing Medicare and Medicaid regulations requiring that covered laboratory testing be medically necessary, Shannon alleged that BHG "submitted thousands of false claims" for those unnecessary tests through its D.C. and Virginia clinics. Id. ¶¶ 38, 42, 76.

The second alleged scheme concerns BHG's use of addiction counselors. Shannon alleged that BHG "adopted a practice of using unlicensed addiction counselors to perform drug treatment services . . . at eight of its Virginia clinics." Id. ¶¶ 77, 80, 81. According to Shannon, that practice violated state law because Virginia Code § 54.1-3506 provides that "to engage in the practice of counseling . . . or in the independent practice of substance abuse treatment," a person must "hold a license issued by the Board [of Counseling]." Va. Code Ann. § 54.1-3506 (West 2026); Am. Compl. ¶ 78. Because "BHG certified that its claims for [Medicare and Medicaid] reimbursement complied with Virginia rules and regulations," Shannon alleged that "[e]ach claim [that BHG] submitted for reimbursement in Virginia that included substance abuse treatment services that were provided by unlicensed counselors [wa]s a false claim." Am. Compl. ¶ 88.

In August 2024, BHG moved to dismiss Shannon's complaint with prejudice under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. In a paragraph at the end of her memorandum in opposition, Shannon requested that "if the court determines that any portion of" her complaint "is deficient," it "grant her the opportunity to" amend her complaint accordingly. Shannon did not attach a proposed amended complaint or otherwise indicate what specific amendments she might make.

In March 2025, the district court granted BHG's motion. The court did not address Shannon's request to amend. On appeal, Shannon argues that she sufficiently alleged violations of the False Claims Act under Rules 8(a) and 9(b). And she argues, in the alternative, that the district court erred by implicitly denying leave to amend.[1]

---

[1] Although Shannon's complaint contains ten counts, only Counts I and II—claims under 31 U.S.C. § 3729(a)(1)(A) and (B)—require analysis on appeal. Shannon voluntarily withdrew Count III, a claim under 31 U.S.C. § 3729(a)(1)(C). She does not appeal the district court's dismissal of Count IV, a claim

**II**

We review Rule 8(a) and 9(b) dismissals *de novo*. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). We review the decision to dismiss with (rather than without) prejudice for abuse of discretion. *Id.* at 1259. Applying these standards, we affirm.

**A**

We affirm the district court's Rule 8(a) and 9(b) dismissal.

The False Claims Act establishes liability for "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the government. 31 U.S.C. § 3729(a)(1)(A). It also imposes liability on "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). Both provisions require that (1) there be a "claim" to the government, (2) the claim is "false or fraudulent," and (3) the misrepresentation is "material" to the government's payment decision. *Id.* § 3729(a)(1)(A)–(B); *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016).

"[B]ecause the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with" not only Rule 8(a)'s plausibility requirement but also Rule 9(b)'s particularity requirement. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002). Rule 8(a) provides that a "pleading that states a claim for relief must contain" a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 9(b) provides that "[i]n alleging fraud," a "party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Together, these rules require that the plaintiff allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that [false] claims were actually submitted." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 126 (D.C. Cir. 2015) (citation omitted).

**1**

Here, Shannon failed to sufficiently allege that false claims based on medically unnecessary urine drug tests were submitted to the government for payment.

The False Claims Act "attaches liability, not to underlying fraudulent activity, but to the claim for payment." *Totten*, 286 F.3d at 551 (cleaned up). Even assuming BHG administered some medically unnecessary tests—in particular, on patients designated as Code 1 or referenced in the Medical Director's email—Shannon alleged no facts supporting "a strong inference" that

---

under 31 U.S.C. § 3729(a)(1)(G). And she has forfeited any challenge to the district court's dismissal of Counts V through X—claims under D.C. and Virginia law—by asserting in a footnote, without further explanation, that "[r]eversing the District Court's March 31, 2025 Memorandum and Opinion and Judgment also reverses dismissal of the state law claims." Appellant's Brief 26 n.2; *see also* Opposition to Motion to Dismiss 23 (similar). As we have long explained, "[i]t is not enough merely to mention a possible argument in the most skeletal way." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 708 (D.C. Cir. 2016).

3

those tests resulted in "actual claims submitted" to Medicare or Medicaid. *United States ex rel. Winnon v. Lozano*, 146 F.4th 1197, 1214–15 (D.C. Cir. 2025). Most notably, she failed to allege that any patient designated as Code 1 or referenced in the Medical Director's email was a Medicare or Medicaid beneficiary, much less specific facts plausibly showing that a claim relating to an allegedly unnecessary urine drug test administered to such a patient was submitted for payment.

Attempting to bridge this gap, Shannon points to her allegation that "80% of BHG's patients were Medicare or Medicaid beneficiaries," which, in her view, "establish[es] [a] near certainty that at least some of the unnecessary" urine drug tests "were performed on Medicare or Medicaid patients and submitted to the government for payment." Appellant's Reply Brief 7, 8 n.1 (citing Am. Compl. ¶ 3). But courts have repeatedly rejected plaintiffs' "rel[iance] on mathematical probability" to argue that defendants "surely must have submitted a false claim at some point." *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1277 (11th Cir. 2018); *see id.* at 1270 (insufficient to allege that "public funds account[ed] for almost 50 percent of [the defendant's] revenue"); *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 33 (1st Cir. 2016) (insufficient to "allege[] that a majority of the patients receiving [medically unnecessary procedures from the defendant] [we]re covered by government healthcare programs" and that "over 10,000 medically unnecessary" procedures were performed). This court has similarly explained that "statistic[s] . . . alone do not meet Rule 9(b) unless accompanied by specific details of the fraudulent scheme" such as "evidence [of,] say, pre-printed billing codes linked to specific patient cases." *Winnon*, 146 F.4th at 1215. That principle applies here. Because Shannon did not allege how many patients were designated as Code 1 or referenced in the Medical Director's email, "it is entirely possible" that those patients fell within the 20% of BHG patients who were "untethered from government funding." *Carrel*, 898 F.3d at 1277.[2]

**2**

Shannon also failed to sufficiently allege false claims based on BHG's use of unlicensed counselors, for two independent reasons.

First, Shannon failed to sufficiently allege that BHG's claims for payment were false. Under the "legally false certification" theory, "a claim for payment is false when it rests on a false representation of compliance with an applicable" legal requirement. *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010). Here, the applicable legal requirement Shannon identifies—Virginia's licensure law—contains numerous exceptions that Shannon has not addressed. For example, unlicensed counselors may provide substance abuse treatment services if they are "supervis[ed]" by licensed counselors, "regulated by another board within the Department of Health Professions," or, in some circumstances, "licensed in another state." Va. Code Ann. §§ 54.1-3506, 54.1-3501(6), 54.1-3501(7) (West 2026). The district court pointed to these exceptions in dismissing Shannon's complaint. On appeal, however, Shannon points to no factual allegations placing BHG's counselors outside their scope. On this

---

[2] The district court dismissed Shannon's unnecessary testing claims solely on the basis that Shannon failed to particularly allege a lack of medical necessity. But we "can affirm a judgment on any basis adequately preserved in the record below." *Heath*, 791 F.3d at 123; *see* Motion to Dismiss 12 (arguing that Shannon failed to "particularly allege . . . whether any claims flowed from" unnecessary urine drug tests).

record, we cannot conclude that Shannon adequately alleged "a false representation of compliance with an applicable" legal requirement. *Sci. Applications*, 626 F.3d at 1266.

To be sure, Shannon's complaint alleges that BHG did not provide "active supervision of unlicensed counselors." Am. Compl. ¶ 90. But on appeal, despite the district court's holding, Shannon does not develop the argument that BHG's counselors fell outside the supervision exception in Virginia Code § 54.1-3506. *See* Appellant's Brief 12; *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly."). Nor does Shannon address any of the remaining statutory exceptions. *See* Va. Code Ann. § 54.1-3501(1)–(7) (West 2026).

Second, Shannon failed to allege facts sufficient to meet the "demanding" materiality requirement, *Escobar*, 579 U.S. at 194, which requires a showing that BHG's noncompliance with Virginia law had "a natural tendency to influence" or was "capable of influencing" the government's payment decision, 31 U.S.C. § 3729(b)(4). In *Escobar*, the Supreme Court held that when a healthcare provider "allegedly flouted [state] regulations [by] employ[ing] unqualified, unlicensed, and unsupervised staff," the government's "decision to expressly identify [the state-law] provision as a condition of payment is relevant, *but not automatically dispositive*" of materiality. *Escobar*, 579 U.S. at 185, 194 (emphasis added). "[P]roof of materiality can include," the Court continued, evidence that "the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* at 194–95. Here, Shannon pleaded no such facts—her complaint only states the conclusion that "[h]ad the Government known that the services billed were . . . performed by an unlicensed counselor, it would not have paid." Am. Compl. ¶ 94. On appeal, Shannon is forced to argue that "materiality is . . . a matter of common sense." Appellant's Brief 21. Under *Escobar*, "common sense" is not enough.

Shannon's reliance on *United States ex rel. Cimino v. IBM*, 3 F.4th 412 (D.C. Cir. 2021), is misplaced. The plaintiff there alleged that the defendant had fraudulently induced the IRS into renewing its software licensing agreement by falsifying audit results. *Id.* at 422. We held that the plaintiff "plausibly pleaded materiality" not because of common sense, but because he alleged specific facts showing that the defendant's "false audit" was "capable of influencing" the IRS. *Id.* at 423. "[P]rior to the audit, the IRS thought it was underutilizing [the defendant's] software and did not want to renew the agreement," and in response, the defendant "presented [the] false audit showing that the IRS was overutilizing the software." *Id.*

**B**

We also affirm the district court's decision to dismiss Shannon's complaint with prejudice.

A "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion to amend." *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009) (cleaned up); *see also Williams*, 389 F.3d at 1259; *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994). By that settled standard, Shannon "never moved to amend [her] complaint in the [d]istrict [c]ourt," and so she has "forfeited" the "claim that the [d]istrict [c]ourt erred in dismissing the complaint with prejudice." *Harper Woods*, 589 F.3d at 1304.

5

\*       \*       \*

For the foregoing reasons, we affirm the district court's dismissal of Shannon's complaint.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk