# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 5, 2007          Decided March 4, 2008

No. 06-5230

MICHELLE HOYTE, BRINGING THIS ACTION ON BEHALF OF
THE UNITED STATES OF AMERICA,
APPELLANT

UNITED STATES OF AMERICA,
APPELLEE

v.

AMERICAN NATIONAL RED CROSS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01054)

*H. Vincent McKnight, Jr.* argued the cause for the appellant.

*Tracy L. Hilmer*, Attorney, United States Department of Justice, argued the cause for appellee United States of America. *Peter D. Keisler*, Assistant Attorney General, *Jeffrey A. Taylor*, United States Attorney, *Douglas N. Letter*, Appellate Litigation Counsel, and *Michael D. Granston* and *Daniel R. Anderson*, Attorneys, United States Department of Justice, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

*John R. Fleder* argued the cause for appellee American National Red Cross.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* TATEL.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Michelle Hoyte filed this action under the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq*. The complaint alleges that Hoyte's former employer, the American National Red Cross (ARC), (1) violated FCA section 3729(a)(7) by failing to report to the Federal Drug Administration (FDA) that ARC had mishandled blood supplies, for which conduct the FDA was authorized to assess financial penalties pursuant to a district court consent decree, (Count I) and (2) violated FCA section 3730(h), the "whistleblower" provision, by discharging Hoyte in retaliation for her investigating, and complaining to supervisors about, the mishandled blood (Count II). The district court dismissed Count I (the reverse false claim[1]) on the ground that it was obliged to defer to the Government's decision to dismiss the claim under FCA section 3730(c)(2)(A), which provides that "[t]he Government may dismiss [an FCA *qui tam*] action

---

[1] Ordinarily under the FCA, "the government, or a party suing on its behalf, may recover for false claims made by the defendant to secure a payment by the government." *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 652 (5th Cir. 2004); *see* 31 U.S.C. § 3729(a)(1)-(6). In a *reverse* false claim action under FCA section 3729(a)(7), "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *Ga. Gulf Corp*., 386 F.3d at 653.

notwithstanding the objections of the person initiating the action." The court dismissed Count II (the retaliation claim) on the ground that Hoyte did not allege that ARC was under an "obligation to pay or transmit money or property to the Government," as section FCA 3729(a)(7) requires for a reverse false claim, and therefore Hoyte's investigation into the blood mishandling, for which investigation she alleged she was discharged, was not "in furtherance of" a viable *qui tam* action so as to be protected activity under the whistleblower provision. *United States ex rel. Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d (D.D.C. 2006). For the reasons set out below, we affirm the district court's dismissal of both counts.

**I.**

On April 15, 2003, the district court issued a consent decree incorporating an agreement between ARC and the United States in which ARC agreed to adopt and follow specified blood handling and reporting requirements. *See United States v. Am. Nat'l Red Cross*, C.A. No. 93-0949 (Apr. 15, 2003) (Consent Decree), *reprinted in* Joint App. (JA) at 27. The Consent Decree provides that the FDA "may assess" financial penalties for various violations of its provisions "up to" specified maximums. *See, e.g.*, *id.* at 35-36, 42, 52, 56-57, 61-64.

Hoyte was an ARC employee from 1997 until June 17, 2004. She alleges that in February 2004, when she was Director of Quality Audits, she discovered ARC had mishandled 607 units of blood at its "Penn-Jersey" facility in Philadelphia. She further alleges that ARC's officials and staff were aware of the mishandled blood but did nothing about it even after she and her staff urged her superiors to report the matter to the FDA as required under the Consent Decree. Finally, she alleges that she scheduled a meeting with ARC's Senior Vice President for Quality Assurance and Regulatory Affairs for June 18, 2004 but was fired by her supervisor over the telephone the day before the meeting.

On June 25, 2004, Hoyte filed this *qui tam* action under FCA section 3730(b)(1), which provides that "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government."[2]  As noted, the complaint includes a reverse false claim count under section 3729(a)(7) for which Hoyte is authorized to bring a *qui tam* action under section 3730(b) and a retaliation claim under the FCA's whistleblower provision, section 3730(h).  The United States filed a notice of election to decline intervention in the suit on November 7, 2005, pursuant to section 3730(b)(2).[3]  On January 24, 2006, ARC moved to dismiss both Count I and Count II for

---

[2]Section 3730(b)(1) further provides: "The action shall be brought in the name of the Government.  The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  Thus, a motion to dismiss by the relator requires the consent of both the Government and the court "[e]ven where the Government has declined to intervene." *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 931 & n.8 (10th Cir. 2005) (citing *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 155 (5th Cir. 1997); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000)).  By contrast, as we explain *infra,* Part II.A, the FCA does not require the court's consent if the Government moves to dismiss.

[3]The FCA provides the United States with two options in a *qui tam* action:

Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall–

   (A) proceed with the action, in which case the action shall be conducted by the Government; or

   (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

31 U.S.C. § 3730(b)(4).

failure to state a claim under Fed. R. Civ. P. 12(b)(6) and to dismiss Count II for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) as well. The United States then moved on February 16, 2006 to dismiss Count I, asserting that under section 3730(c)(2)(A) "the United States' decision to dismiss th[e] case is not subject to judicial review." U.S. Mot. to Dismiss 1.

On April 27, 2006 the district court held a hearing on the motions to dismiss at the conclusion of which it granted the Government's motion to dismiss Count I and deferred ruling on ARC's motion. 4/27/06 Hr'g Tr. 43-44. On July 14, 2006 the court issued an opinion and order in which it granted ARC's motion to dismiss Count II. *United States ex rel. Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38 (D.D.C. 2006).

Hoyte filed a notice of appeal on August 3, 2006.

## II.

Hoyte contends the district court erred in dismissing Count I and Count II. We consider each count in turn.

### A. Count I: Reverse False Claim Charge

Section 3730(c)(2)(A), which sets out the "[r]ights of the parties to qui tam actions" brought on behalf of the United States, provides: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." In granting the Government's motion to dismiss Count I, the district court concluded that under this provision, as construed in *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003), the court did not "have a role to play" in the Government's decision whether to dismiss Count I given "the general presumption of the Government's right to end a prosecution" and the absence of special circumstances that "warrant an exception such as fraud

on the court." 4/27/06 Hr'g Tr. 41. The district court correctly dismissed Count I.

In *Swift*, a Department of Justice (DOJ) lawyer filed a *qui tam* action alleging that three employees of the DOJ Office of Legal Counsel had conspired to defraud the Government of $6,169.20 using falsified time sheets and leave slips. The Government moved to dismiss the action and the district court granted the motion. On appeal, we upheld the dismissal, concluding that the Government has what amounts to "an unfettered right to dismiss" a *qui tam* action, citing four bases for our conclusion: (1) the separation of powers doctrine, (2) the Government's broad discretion in initiating or continuing a criminal prosecution, (3) Federal Rule of Civil Procedure 41(a)(1)(i), which permits a plaintiff to dismiss a civil action "without order of the court," and (4) the language of section § 3730(c)(2)(A) itself, which grants to "[t]he Government" (not the court) unilateral authority to "dismiss the action notwithstanding the objections of the person initiating the action." *Swift*, 318 F.3d at 252. As we there explained: "Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States. The provision neither sets 'substantive priorities' nor circumscribes the government's 'power to discriminate among issues or cases it will pursue.' " *Id.* at 253 (quoting *Heckler v. Chaney*, 470 U.S. 821, 833 (1985)). In addition, we noted that, although "the government conceded at oral argument that there may be an exception for 'fraud on the court,' no evidence of that sort was presented" and therefore we "d[id] not pass on whether this type of exception, or any other, might be consistent with our reading of § 3730(c)(2)(A)." *Id.*

We conclude that under *Swift* the district court correctly deferred to the Government's virtually "unfettered" discretion to dismiss the *qui tam* claim. As in *Swift*, there is no evidence

here of fraud on the court or any similar exceptional circumstance to warrant departure from the usual deference we owe the Government's determination whether an action should proceed in the Government's name. Hoyte asks us to recognize a new exception for a dismissal "clearly contrary to manifest public interest," Appellant's Br. at 14, contending that in *Swift* we left the door open for future recognition of other types of exceptions in addition to "fraud on the court." In *Swift*, however, we flatly rejected the relator's suggestion that we routinely review the Government's decision to dismiss a *qui tam* action, instead holding the door only barely ajar for review in an exceptional circumstance—in particular, where there is "fraud on the court." *See id.* at 253. It is clear from *Swift* that any exception to section 3730(c)(2)(A)—if there are any—must be like "fraud on the court" and Hoyte's proposed "manifest public interest" exception is not.[4] Hoyte was afforded the hearing the FCA mandates to give her "a formal opportunity to convince the government not to end the case." *Id.* The Government was not persuaded to proceed, however, and its decision to dismiss the case, based on its own assessment, is not reviewable in the district court or this court. Accordingly, we affirm the district court's dismissal of Count I.

---

[4]In *Swift*, we declined to adopt the judicial review standard for a *qui tam* action endorsed by the Ninth Circuit, under which the Government must initially show that dismissal is "rationally related to a valid purpose," after which the relator bears the burden to show the decision to dismiss is "fraudulent, illegal, or arbitrary and capricious." *See Swift*, 318 F.3d at 252 (quoting *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998), *cert. denied*, 525 U.S. 1067 (1999)). We explained that we "c[ould ]not see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive's judgment" in deciding "that an action brought in its name should be dismissed." *Id.*

### B. Count II: Retaliation Claim

FCA section 3730(h) provides in relevant part:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others *in furtherance of an action under this section*, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (emphasis added). Count II alleges that ARC violated this provision by discharging Hoyte in retaliation for her "protected activity," namely, "repeatedly advising her supervisors that she believed that the American Red Cross had violated the law, [standard operating procedures], and the Consent Decree by not appropriately addressing the problems associated with the collection of the 607 unsuitable units of blood in Penn-Jersey." Compl. ¶ 71. The district court dismissed Count II on the ground that Hoyte's investigation and complaints about the blood handling and reporting were not "in furtherance of" an FCA action as required by section 3730(h) because Count I—asserting the reverse false claim under section 3729(a)(7)—did not allege that ARC had any "obligation to pay or transmit money or property to the Government" as section 3729(a)(7) requires. We agree.

This court has established that

to prevail on a whistleblower claim, an employee must demonstrate that:

(1) he engaged in protected activity, that is, "acts done . . . in furtherance of an action under this section"; and

(2) he was discriminated against "because of" that activity. To establish the second element, the employee must in turn make two further showings. The employee must show that: (a) "the employer had knowledge the employee was engaged in protected activity"; and (b) "the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity."

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1260 (D.C. Cir. 2004) (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (quoting S. Rep. No. 99-345, at 35 (1986) (alterations in *Yesudian*))).[5] For the first requirement—engaging in protected activity—" 'it is sufficient that a plaintiff be investigating matters that 'reasonably could lead' to a viable False Claims Act case.' " *Id.* (quoting *Yesudian*, 153 F.3d at 740). The matters Hoyte was investigating, however, could not have reasonably led to a viable FCA case. Section 3729(a)(7), on which Hoyte relies, imposes civil liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." Yet Hoyte has not alleged that ARC had any "obligation to pay or transmit money or property to the Government" which it "could conceal, avoid, or decrease" through a false statement or record so as to

---

[5]Although both *Williams* and *Yesudian* involved the more usual type of FCA action to recover for false claims made to secure a payment by the Government, the retaliation requirements set forth therein apply equally to a reverse false claim retaliation action. *See Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001) (plaintiff asserting reverse false claim retaliation "must show (1) he engaged in 'protected conduct,' (i.e., acts done in furtherance of an action under § 3730) and (2) that he was discriminated against because of his 'protected conduct.' " (citing *Yesudian*, 153 F.3d at 736)).

violate section 3729(a)(7). The Consent Decree imposed no obligation on ARC to tender money or property to the Government but only to follow the prescribed blood handling and reporting requirements. In this respect, ARC is in the same position as any regulated entity subject to possible sanctions for violating an administrative requirement and we made clear in *Yesudian* that an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim or, consequently, a related whistleblower claim.

Like Hoyte, the plaintiff in *Yesudian* filed a *qui tam* action asserting both (1) a false claim count—alleging that his superior in the Purchasing Department at Howard University (Howard) falsified time and attendance records, accepted bribes from vendors, permitted payments to vendors who provided no services to Howard and took university property home for personal use—and (2) a whistleblower claim—alleging he was discharged because he reported the misconduct to various Howard officials. A jury returned a verdict against the relator on the false claim count and in his favor on the whistleblower count but the district court subsequently granted the defendants' motion for judgment as a matter of law on the whistleblower count.

On appeal, we reversed the judgment on the whistleblower claim. Noting that in a whistleblower claim, "it is sufficient that a plaintiff be investigating matters that 'reasonably could lead' to a viable False Claims Act case," 153 F.3d at 740, we concluded that neither the relator's uncertainty whether a FCA suit would follow nor the jury's adverse verdict on the false claim count precluded success on the whistleblower count. *See id.* at 741 ("Nor was it necessary for Yesudian to 'know' that the investigation he was pursuing could lead to a False Claims Act suit."), 739 ("[T]he protected conduct element of such a claim does not require the plaintiff to have developed a winning qui

tam action before he is retaliated against."). Nonetheless, we unequivocally stated that "an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations" is not enough to support a whistleblower claim. *Id*. at 740 (citing *Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996)). In *Yesudian*, we found that "the nature of [the relator's] charges could not have been mistaken for a complaint about mere regulatory compliance" because his was a "classic false claim" which charged his supervisor with attempting to defraud the Government of money. *Id*. at 744. Not so with Hoyte's claim, which cannot be deemed a "classic" reverse false claim—in which the defendant's alleged deception "results in no payment to the government when a payment *is obligated*," *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004) (emphasis added)—but, in contrast to *Yesudian*, involves "mere regulatory compliance," namely, ARC's failure to follow the blood handling and reporting procedures spelled out in the Consent Decree.

Relying heavily on *Yesudian*, Hoyte contends the district court erred in dismissing her whistleblower count because "winning the underlying claim is not a necessary predicate to maintaining a Section (h) action." Appellant's Br. 27. It is true that under *Yesudian* a relator need not ultimately prevail on a FCA charge in order to recover for retaliation under section 3730(h). *See* 153 F.3d 739. Indeed, in *Yesudian*, we concluded that the evidence supported the jury verdict in the relator's favor on the whistleblower claim notwithstanding the jury found against the relator on the underlying false claim count and we therefore reversed the district court's post-trial judgment setting aside the whistleblower verdict. Nonetheless, we made clear that the relator must have been "investigating matters that 'reasonably could lead' to a viable False Claims Act case," *id*. at 740, and here that is simply not the case. Under no

reasonable interpretation of the statutory language can ARC be deemed to have had an "obligation to pay or transmit money . . . to the Government," as section 3729(a)(7) requires, at the time of Hoyte's investigation and complaints. Hoyte's investigation was into mere regulatory noncompliance and did not "concern 'false or fraudulent claims' " as it must to support a retaliation claim under section 3729(a). *Yesudian*, 153 F.3d at 740 (citing 31 U.S.C. § 3729(a)). Because the conduct Hoyte was investigating—ARC's failure to report its noncompliance with the Consent Decree—could not have reasonably led to a viable claim under section 3729 of the FCA, her investigation of it was not protected activity "*in furtherance of an action under* [*section 3730*]," 31 U.S.C. § 3730(h)—that is, an action "for a violation of section 3729," *id*. § 3730(b)(1)—so as to support a retaliation claim. *Cf. Hamm v. Weyauwega Milk Prods.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (district court properly dismissed Title VII retaliation claim because complaints to employer and state agency amounted to claims of sexual orientation discrimination, not sex discrimination, and therefore "did not concern an employment practice that violated Title VII").

Relying again on language in *Yesudian*, Hoyte contends the court should focus on "whether Hoyte had a good faith chance of success at the time that she suffered the retaliation." Appellant's Br. 27. In *Yesudian* the defendants argued that no actionable false claim charge existed at the time of the relator's investigation because there was no evidence that Howard ever re-submitted the allegedly false claims to the Government so as to transform the defendants' fraud on Howard into fraud on the United States as well. Without expressly deciding whether re-submission was necessary, the court concluded that Yesudian's personal knowledge that "80% of Howard's money came from the United States Government" afforded "a good faith basis for going forward at the time of the retaliation" because, "[g]iven the information he had about Howard's finances, it would have been reasonable to conclude there was a 'distinct possibility' he

would find evidence of resubmission of the claims." 153 F.3d at 739-40 (quoting *Childree v. UAP/GA AG CHEM., Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996) (requiring "distinct possibility" of suit), *and Neal v. Honeywell Inc.*, 33 F.3d 860, 864 (7th Cir. 1994) (sufficient if litigation was "distinct possibility" or "could be filed legitimately")). As we explained in *Yesudian*, determining whether the false claims were re-submitted required "the kind of information a plaintiff normally cannot acquire until he files a suit and obtains the benefits of court-sanctioned discovery." *Id.* at 740. We therefore concluded Yesudian's personal knowledge provided the requisite "good faith basis" at the time of the investigation and retaliation to believe the defendants were defrauding the federal Government. Hoyte, in contrast, regardless of her subjective beliefs, had no objectively reasonable basis to believe that she was " 'investigating matters that reasonably could lead' to a viable False Claims Act case.' " *Martin-Baker Aircraft Co.*, 389 F.3d at 1260 (quoting *Yesudian*, 153 F.3d at 740); *see Lang v. Nw. Univ.*, 472 F.3d 493, 495 (7th Cir. 2006) ("What [FCA relator] actually believed is irrelevant, for people believe the most fantastic things in perfect good faith; a kind heart but empty head is not enough. The right question is whether her belief had a reasonable objective basis . . . ."). There was not even a "distinct possibility" that her claim against ARC might become viable before or at trial because under any view of the facts as alleged the claim lacked one of the legal requirements for a reverse false claim charge: the defendant must have an "obligation to pay or transmit money or property to the Government," 31 U.S.C. § 3729(a)(7). ARC had no such obligation and no amount of discovery could cure this defect. There being no viable action against ARC under section 3730 for violation of section 3729(a), Hoyte's investigation and reporting of ARC's conduct did not constitute "protected activity"—"that is, 'acts done . . . in furtherance of an action under [section 3730],' " *Yesudian*, 153 F.3d at 736 (quoting S.

Rep. No. 99-345, at 35 (1986))—and her subsequent discharge was therefore not unlawful retaliation under section 3730(h).[6]

The dissent argues that Hoyte can pursue a retaliation claim even in the absence of a viable reverse FCA claim, relying in part on language culled from the Supreme Court's decision in *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409 (2005).  Dissent at 1, 2-3, 4, 8.  In *Graham County*, the question before the Supreme Court was whether the correct limitations period for an FCA retaliation claim is the 6-year period prescribed in FCA for "[a] civil action under section 3730," 31 U.S.C. § 3731(b)(1), or the period established under the "most closely analogous state statute of limitations," 545 U.S. at 422.  The Court held the latter and in the course of its analysis, observed that "proving a violation of § 3729 is not an element of a § 3730(h) cause of action" and thus, section 3730(h) "protects an employee's conduct even if the target of an investigation or action to be filed was innocent," *id*. at 416 & n.1—both points that we made in *Yesudian* when we upheld the jury's verdict in Yesudian's favor on the whistleblower claim notwithstanding the jury held against him on the underlying *qui tam* claim.  While it is true, as the dissent notes, that " 'a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim,' " Dissent at 8 (quoting *Graham County*, 545 U.S. at 416), the complaint must allege that "the defendant retaliated against him for

---

[6]The Government argues as amicus on Count II that the district court erroneously "advanced the view that an actionable 'obligation' means 'a present, existing debt or liability, owed at the time the alleged false statement is made, and not some future or contingent liability.' " United States Br. 24 (quoting 439 F. Supp. 2d at 43).  Because Hoyte's allegations identify *no* obligation on ARC's part to tender money or property, we need not decide the extent, if any, to which such an obligation must be fixed to support a reverse false claim action under section 3729(a)(7).

engaging in 'lawful acts done . . . in furtherance of' an FCA 'action filed or to be filed,' *Graham County*, 545 U.S. at 416 (quoting 31 U.S.C. § 3730(h) (ellipsis in *Graham*)), that is, for engaging in protected conduct. *Yesudian* defines "protected conduct" as conduct that " 'reasonably could lead' to a viable False Claims Act case," 153 F.3d at 740, as the Court acknowledged in *Graham County*, 545 U.S. at 416 n.1 (citing *Yesudian*).[7]

As we have explained, *supra* pp. 11-14, under *Yesudian* Hoyte's investigation could not reasonably lead to a viable reverse false claim action under section 3729(a)(7) (so as to support a whistleblower claim under section 3730(h)) because the activity she claims to have been investigating did not constitute an attempt to "conceal, avoid, or decrease an obligation to tender money or property to the Government." The plain language of the statute (whether read by a lawyer or layman) requires that there be an obligation to make payment to the Government and ARC had no such obligation, "contractual" or otherwise. *See* Dissent at 7. It is true, as the dissent asserts, Dissent at 4-5, that the statute does not require in so many words that the investigation be in furtherance of a "viable" or "non-frivolous" action. But section 3730(h) does expressly require that the whistleblower's conduct, to be protected, be "in furtherance of an action *under this section*" (emphasis added), that is, in furtherance of an action under section 3730, which in turn requires that the action be "for a violation of section 3729" (in this case a violation of section 3729(a)(7)). Thus, to recover for retaliation under section 3730(h), it is not sufficient that the whistleblower further an action under some other statutory scheme or, as here, a non-existent action. In any event, it is the

---

[7]The Court also noted that circuit courts had adopted varying "formulations" of what constitutes protected activity, without endorsing any particular one. 545 U.S. at 416 n.1.

law of this Circuit that "the employee must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (quotation omitted); *see also Martin-Baker Aircraft Co.*, 389 F.3d at 1260; *Yesudian*, 153 F.3d at 740. And a frivolous action is by definition not a viable one. *See Brandon v. D.C. Bd. of Parole*, 734 F.2d 56, 59 (D.C. Cir. 1984) ("[I]f the complaint is *viable*—it cannot be deemed frivolous."). Because there was no viable FCA action here, the district court properly dismissed Count II.

For the foregoing reasons, we affirm the district court's judgment dismissing Hoyte's complaint.

*So ordered.*

TATEL, *Circuit Judge*, concurring in part and dissenting in part: Michelle Hoyte, Director of Quality Audits for the American Red Cross, discovered that the organization had mishandled hundreds of units of blood destined for human transfusion and was hiding its mistake from the government. Under a consent decree the Red Cross had signed with the government, this deception authorized the government to impose substantial fines on the organization. Hoyte urged her supervisors to report what had occurred, ultimately scheduling a meeting with a Senior Vice President to discuss her concerns. But the day before the meeting, Hoyte's supervisor fired her because of her actions.

Acknowledging these sordid allegations, the court nevertheless concludes that Hoyte failed to state a retaliation claim under the False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, because she never alleged that the Red Cross actually filed a false claim. The Supreme Court has made clear, however, that "a well-pleaded retaliation complaint *need not allege that the defendant submitted a false claim.*" *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005) (emphasis added). Rather, as I demonstrate below, plaintiffs need only show they reasonably believed their employer violated the FCA—a standard Hoyte plainly satisfies. I therefore respectfully dissent from Part II.B. of the court's opinion.

Congress enacted the FCA to prevent fraud against the government. Because "[d]etecting fraud is usually very difficult without the cooperation of individuals who are either close observers or otherwise involved in the fraudulent activity," S. REP. NO. 99-345, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5269, Congress included several provisions in the FCA to encourage whistleblowers, *see, e.g.*, 31 U.S.C. § 3730(d) (allowing whistleblowers to receive a portion of any recovery by the government based on information they provide). Relevant here, 31 U.S.C.

§ 3730(h) protects whistleblowers from retaliation by their employers:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

*Id.*

As we explained in *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731 (D.C. Cir. 1998), to prevail on a whistleblower claim "an employee must demonstrate that: (1) he engaged in protected activity, that is, 'acts done . . . in furtherance of an action under this section'; and (2) he was discriminated against 'because of' that activity." *Id.* at 736 (quoting 31 U.S.C. § 3730(h)) (omission in original). To satisfy the first requirement—the one the court believes Hoyte failed to meet—"it is sufficient that a plaintiff be investigating matters that reasonably could lead to a viable False Claims Act case." *Id.* at 740 (citation and internal quotation marks omitted). As the Supreme Court has made clear, this does not mean that at the time the employee engaged in the investigative conduct there had to be a reasonable possibility that she would prevail on an FCA claim, for an employee can prevail on a retaliation claim even if the facts ultimately make it impossible for any underlying FCA claim to succeed. *See*

*Graham County*, 545 U.S. at 416 (stating that section 3730(h) "protects an employee's conduct even if the target of an investigation or action to be filed was innocent"); *id.* at 416 n.1 ("[P]roving a violation of § 3729 is not an element of a § 3730(h) cause of action.").

Thus, instead of requiring an *actual* possibility of success on the underlying FCA claim, *Yesudian* holds only that the employee must have reasonably *believed* her investigative acts could lead to a viable FCA claim. Three of our sister circuits have described the test this way: "[T]he relevant inquiry to determine whether an employee's actions are protected under § 3730(h) is whether: '(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'" *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004) (quoting *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002)); *accord Wilkins v. St. Louis Housing Auth.*, 314 F.3d 927, 933 (8th Cir. 2002). The FCA's legislative history confirms that this test mirrors what Congress intended. The Senate Report accompanying the FCA's retaliation provision explains that for an employee to be protected by the Act, "the employer would not have to be proven in violation of the False Claims Act," but "the actions of the employee must result from a 'good faith' belief that violations exist." S. REP. NO. 99-345, at 35, *reprinted in* 1986 U.S.C.C.A.N. at 5300; *see also Graham County*, 545 U.S. at 416 ("[A] well-pleaded retaliation complaint need not allege that the defendant submitted a false claim.").

Properly understood then, the question before us is this: could Hoyte have reasonably believed that the Red Cross had violated the FCA? The answer is plainly yes.

The FCA makes it illegal to "knowingly make[], use[], or cause[] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). The consent decree the Red Cross had entered with the government required the organization to disclose certain types of blood handling errors—such as the ones alleged here—and failure to do so authorized the government to impose substantial fines. Thus, Hoyte could reasonably have believed that by hiding its blood handling errors the Red Cross was attempting "to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." *Id.* To be clear, I take no position on whether the Red Cross actually violated section 3729(a)(7); I maintain only that Hoyte could reasonably have believed that the Red Cross violated the statute by hiding this information.

Even were the reasonableness of Hoyte's belief debatable, I would give her the benefit of the doubt, for several factors counsel a generous approach in deciding whether an FCA retaliation plaintiff's beliefs were reasonable. The first is the statute's plain text, which requires only that the act the employee engaged in was somehow "in furtherance of *an action* under this section," 31 U.S.C. § 3730(h) (emphasis added), not "an action that is reasonably likely to succeed," or even "a non-frivolous action." *See Graham County*, 545 U.S. at 416 ("A retaliation plaintiff . . . need prove only that the defendant retaliated against him for engaging in 'lawful acts done . . . in furtherance of' an FCA 'action filed or to be filed,' language that protects an employee's conduct even if the target of an investigation or action to be filed was innocent." (quoting 31 U.S.C. § 3730(h)) (second omission in original)). Thus, the statute itself imposes no requirement—indeed, it includes no suggestion—that an employee's underlying FCA claim must

be even remotely viable to support a retaliation claim. Although courts, including this one, have nonetheless imposed this requirement to discourage frivolous claims, *see Yesudian*, 153 F.3d at 740, we should avoid reading into the statute any more than is absolutely necessary to achieve this goal, and a minimal reasonableness requirement will suffice. Requiring anything more would—without any basis in the statute—often leave employees unprotected even when they acted in good faith to prevent fraud against the government. Such a result would directly contravene the FCA's goal of "encourag[ing] any individual knowing of Government fraud to bring that information forward." S. REP. NO. 99-345, at 2, *reprinted in* 1986 U.S.C.C.A.N. at 5267.

Moreover, we must keep in mind that nearly all employees who investigate and bring fraud claims are laypeople, not lawyers. Expecting laypeople to know with any degree of certainty whether their employers' actions violate the FCA's often vague provisions is simply unrealistic, especially when courts themselves disagree over what constitutes a viable FCA claim. *Compare United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1201 (10th Cir. 2006) (holding that the term "obligation" in the FCA includes "instances in which a party is required to pay money to the government, but, at the time the obligation arises, the sum has not been precisely determined") *with United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 774 (8th Cir. 1997) ("[A]n obligation under the meaning of the False Claims Act[] must be for a fixed sum that is immediately due."). As we said in the analogous context of Title VII retaliation claims, "a layperson should not be burdened with the 'sometimes impossible task' of correctly anticipating how a given court will interpret a particular statute." *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981) (quoting *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045

(7th Cir. 1980)). Thus, when deciding whether a plaintiff's beliefs were reasonable, we must put ourselves in the layperson's shoes, for "[t]here is no suggestion in the [FCA's] legislative history that Congress meant to extend protection only to lawyers, or to others only after they have consulted with lawyers." *Yesudian*, 153 F.3d at 741.

Given these considerations, it becomes even clearer that Hoyte's belief was reasonable. The court holds to the contrary, but its reasons for doing so are unpersuasive.

The court first states that no one could have thought the Red Cross violated the FCA because "[t]he Consent Decree imposed no obligation on [the Red Cross] to tender money or property to the Government but only to follow the prescribed blood handling and reporting requirements." Maj. Op. at 10. The consent decree, however, expressly authorized the government to fine the Red Cross if it failed to disclose information like the blood mishandling incident that allegedly occurred here. Am. Consent Decree of Permanent Inj., *United States v. Am. Nat'l Red Cross*, Civ. No. 93-0949, at 52 (D.D.C. Apr. 15, 2003). Thus, at the time Hoyte began pressuring her superiors to report the mistake, the government already had the authority to fine the Red Cross—all it needed was to know of the Red Cross's error, precisely the information the Red Cross hid. Again, I take no position on whether this means the Red Cross actually violated section 3729(a)(7) by lying to avoid an obligation to the government, but it certainly made it reasonable for Hoyte to believe as much.

The court next says there was no obligation here because the Red Cross "is in the same position as any regulated entity subject to possible sanctions for violating an administrative requirement and we made clear in *Yesudian* that an

unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim." Maj. Op. at 10. I would agree if the Red Cross had only violated federal statutes or regulations governing blood handling. But the Red Cross violated a consent decree it had entered with the government, and as we have repeatedly held, "a consent decree . . . is essentially a contract." *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007) (citation omitted). Given that the Red Cross was violating a contract with the government, Hoyte could reasonably have believed the organization was violating the FCA, for courts have universally held that "a contractual obligation falls within the scope of § 3729(a)(7)." *Bahrani*, 465 F.3d at 1204; *see also, e.g.*, *Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.,* 190 F.3d 729, 741 (6th Cir. 1999) ("§ 3729(a)'s definition of 'obligation' certainly includes those arising from . . . breaches of government contracts . . . .").

Third, the court states that "[u]nder no reasonable interpretation of the statutory language can [the Red Cross] be deemed to have had an 'obligation to pay or transmit money . . . to the Government,' as section 3729(a)(7) requires." Maj. Op. at 11-12. But this ignores a key part of the statute. The reverse false claims provision prohibits making a false statement to "conceal, *avoid*, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7) (emphasis added). Hoyte's very allegation is that the Red Cross was attempting to *avoid* paying a fine to the government by hiding a blood handling error the consent decree required it to report.

Finally, the court asserts that "under *Yesudian* Hoyte's investigation could not reasonably lead to a viable reverse false claim action under section 3729(a) (so as to support a whistleblower claim under section 3730(h)) because the

activity she claims to have been investigating did not constitute an attempt to 'conceal, avoid, or decrease an obligation to tender money or property' to the Government." Maj. Op. at 15. But this is no different from *Yesudian* itself, where we allowed the plaintiff's whistleblower claim even though he never proved that "the activity [he] claim[ed] to have been investigating . . . constitute[d] an attempt to 'conceal, avoid, or decrease an obligation to tender money or property' to the Government." *Id.*; *see also Yesudian*, 153 F.3d at 740-41 (stating that Yesudian's retaliation claim could proceed even without "evidence . . . necessary to prove a False Claims Act case"). And it again ignores the Supreme Court's directive in *Graham County* that "a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim." 545 U.S. at 416.

In sum, the Red Cross fired Hoyte for acting on her good faith, reasonable belief that the organization had violated the FCA by attempting to "avoid . . . an obligation to pay or transmit money . . . to the Government." 31 U.S.C. § 3729(a)(7). Because the FCA requires nothing more to state a retaliation claim, I would reverse the district court's dismissal of Hoyte's claim.