**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THOMAS THORNTON,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ACADEMY OF SCIENCES,<br><br>Defendant. | No. 25-cv-2155 |

**MEMORANDUM OPINION**

Plaintiff Thomas Thornton alleges that his former employer, the National Academy of Sciences ("NAS"), retaliated against him for complaining of race discrimination, in violation of the False Claims Act, the D.C. Human Rights Act, and District of Columbia common law. *See* Compl. ¶ 1, ECF No. 1-6. NAS moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. to Dismiss, ECF No. 6. For the following reasons, the court will GRANT NAS's Motion to Dismiss as to the False Claims Act count and remand the case to D.C. Superior Court for adjudication of the remaining local-law claims.

**I.    BACKGROUND**

Thornton, a White man, was employed by NAS as Director of the Board on Environmental Change and Society from November 2021 to August 2024. Compl. ¶¶ 6, 7, 30. Thornton reported to Carlotta Arthur, the Executive Director of the Division of Behavioral and Social Sciences and Education, who reports to Gregory Symmes, Chief Program Officer and Executive Officer. *Id.* ¶¶ 10–11.

In 2023, NAS assembled a team of experts, including several Indigenous scholars, to "carry out a consensus study on the co-production of environmental knowledge to assess the field and recommend ways to effectively integrate Western Science and Indigenous and Local Knowledge of environmental change for societal benefit." *Id.* ¶¶ 17, 20. NAS received funding for the study in part from the National Aeronautics and Space Administration. *Id.* ¶ 19. In conducting the study, NAS maintained primary responsibility for drawing the applicable conclusions and preparing the report in accordance with its existing policies and procedures. *Id.* ¶¶ 21–22. According to Thornton, Arthur and Symmes "ignored or silenced Indigenous voices during the study," including by "kick[ing] a highly respected Indigenous scholar off the committee when he suggested an alternative approach." *Id.* ¶ 28.

Thornton alleges that NAS employed "racist ideology and methodology in conducting the study" by placing "Western 'white' concepts of science on a higher level than Indigenous . . . concepts." *Id.* ¶ 24. Thornton claims he "tried to support giving the Indigenous scholars and committee members a greater role," but "was rebuffed" by Arthur and Symmes. *Id.* ¶ 29. In December 2023, Thornton filed an internal complaint against Arthur, alleging she discriminated against and made false allegations about him. *Id.* ¶ 12. Thornton was placed on paid administrative leave for two months while the investigation was pending. *Id.* ¶¶ 13–14. He alleges that upon his return, Arthur and Symmes retaliated against him by "shifting resources away from his projects," "reducing [his] regularly scheduled meetings," and "refus[ing] to engage in mediation." *Id.* ¶ 16. In June 2024, Thornton was terminated; his termination letter cited his "commitment to outside activities" and the "current state" of the Board on Environmental Change and Society. *Id.* ¶ 30–31. The study was also subsequently terminated. *Id.* ¶ 34.

Thornton alleges that the "use of federal funds . . . to support a racist study was a misuse of funding and constituted a violation of the Federal False Claims Act" and that he was retaliated against and defamed in violation of District of Columbia law. *Id.* ¶¶ 25, 42–60. He seeks to be reinstated at NAS and $2,000,000 in backpay, benefits, and compensatory damages. *Id.* at 10–11.

## II. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2022). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must assume all "well-pleaded factual allegations" are true, *id.* at 679, and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III. ANALYSIS

The False Claims Act's "anti-retaliation provision protects whistleblowers 'who seek to expose or to prevent government fraud.'" *United States ex rel. Kini v. Tata Consultancy Servs., Ltd*, 146 F.4th 1184, 1189 (D.C. Cir. 2025) (quoting *Singletary v. Howard Univ.*, 939 F.3d 287, 293 (D.C. Cir. 2019)). Such claims are reserved for defendants "who knowingly defraud the government—for example, a company that fraudulently overcharges the government for goods," or "a health clinic that provides the government false information to obtain Medicaid reimbursement." *Abdelhamid v. Lane Constr. Corp.*, 744 F. Supp. 3d 10, 22 (D.D.C. 2024). To prevail on a False Claims Act whistleblower claim, an employee must demonstrate that she was

discriminated against "because of" acts taken "in furtherance of an action" under the statute or "other efforts to stop 1 or more violations" of the statute. 31 U.S.C. § 3730(h). An employee's actions are "in furtherance of" an action under the statute "if she 'investigat[es] matters that reasonably could lead to,' or have a 'distinct possibility' of leading to, a 'viable False Claims Act case.'" *Singletary*, 939 F.3d at 295 (quoting *Hoyte v. American Nat'l Red Cross*, 518 F.3d 61, 66, 68–69 (D.C. Cir. 2008)). "Dissatisfaction with one's treatment on the job is not enough": "the plaintiff's investigation must concern 'false or fraudulent claims' submitted for federal funding." *Id.* (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998)).

The court is unpersuaded that Thornton has plausibly alleged that his internal complaint about Arthur's management of the study constituted an investigation into conduct that could reasonably have violated the statute. Thornton's theory appears to be that engaging in discriminatory conduct while conducting a federally funded study necessarily constitutes the misuse of federal funds in violation of the False Claims Act. *See* Compl. ¶ 62–65. But this Circuit has "unequivocally stated that 'an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations' is not enough to support a whistleblower claim." *Hoyte*, 518 F.3d at 67 (quoting *Yesudian*, 153 F.3d at 740). The complaint must include *some* evidence of "false certifications of compliance . . . in connection with funding claims" and that the plaintiff's investigation "coincided with [the] reporting period." *Singletary*, 939 F.3d at 298, 301. Thornton's Complaint includes neither.

In any case, even assuming that Thornton sufficiently alleged protected conduct, his Complaint lacks nonconclusory allegations giving rise to a reasonable inference that he was terminated or otherwise discriminated against "because of" such activity. 31 U.S.C. § 3730(h); *see Singletary*, 939 F.3d at 299. Given that he was terminated seven months after he lodged his

internal complaint, the mere fact that his discharge occurred after the complaint is insufficient, standing alone, to provide the necessary causal link. *See* Compl. ¶ 12, 30; *cf. U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1240 (D.C. Cir. 2012) (determining causal connection existed where relator was fired two weeks after disclosing fraud suspicions). Nor does he proffer any evidence supporting his assertion that Arther and Symmes "shift[ed] resources away from his projects," "reduc[ed] Thornton's regularly scheduled meetings," and "refused to engage in mediation" because of the investigation. Compl. ¶ 45. Because Thornton has failed to plausibly plead the necessary elements of a False Claims Act retaliation claim, dismissal is appropriate.

"Federal district courts are given supplemental (or 'pendent') jurisdiction over state claims that 'form part of the same case or controversy' as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they 'may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.' 28 U.S.C. § 1367(c)(3)." *Turner v. Corr. Corp. of Am.*, 56 F. Supp. 3d 32, 36 (D.D.C. 2014). "When all federal claims are eliminated before trial, . . . judicial economy, convenience, fairness, and comity . . . point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (cleaned up). Because, in dismissing Thornton's claim for retaliation under the False Claims Act, the court has dismissed all claims over which it has original jurisdiction, and the case has not progressed in federal court past NAS's Motion to Dismiss, the court declines to exercise supplemental jurisdiction over Thornton's claims under District of Columbia law. *See* 28 U.S.C. § 1367(c)(3). But because NAS removed the case here, the court will remand the matter to Superior Court, where Thornton may prosecute his local causes of action. *See Floyd v. PNC Mortg.*, 216 F. Supp. 3d 63, 69 (D.D.C. 2016).

**IV.     CONCLUSION**

Accordingly, Defendant's Motion to Dismiss is GRANTED with respect to his federal law claim and the case is remanded to the D.C. Superior Court for adjudication of the remaining claims. A separate order will follow.

Date: November 7, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge