# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 24, 2009      Decided December 29, 2009

No. 08-7101

CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM,
DERIVATIVELY ON BEHALF OF BAE SYSTEMS PLC.,
APPELLANT

v.

RICHARD (DICK) L. OLVER, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01646)

*Eric Alan Isaacson* argued the cause for appellant. With
him on the briefs were *Patrick J. Coughlin*, *Mark Solomon*, and
*Roger M. Adelman*. *Jonathan W. Cuneo* entered an appearance.

*Lawrence Byrne* argued the cause for appellees BAE
Systems, PLC and the Individual BAE Systems PLC appellees.
With him on the brief were *Mary K. Warren* and *Sterling P.A.
Darling, Jr.*

*Christopher T. Lutz*, *Eric M. Roth*, *Adir G. Waldman*, and
*Richard L. Brusca* were on the brief for appellees the PNC
Financial Services Group, Inc. and the Allbrittons.

Before: GINSBURG and HENDERSON, *Circuit Judges*, and
EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: City of Harper Woods Employees' Retirement System ("Harper Woods"), a pension fund, brought a shareholder derivative suit on behalf of BAE Systems PLC ("BAE") alleging intentional, reckless, and negligent breaches of fiduciary duties and waste of corporate assets by current and former directors and executives of BAE. Harper Woods also sued PNC Financial Services Group, the legal successor to Riggs Bank, as well as Joseph, Barbara, and Robert Allbritton, Riggs' former controlling shareholders and operating executives, for aiding and abetting the alleged breaches of fiduciary duties. The District Court dismissed the suit, holding that English law controls and that Harper Woods has no standing under English law to pursue the instant action. *See City of Harper Woods Employees' Ret. Sys. v. Olver*, 577 F. Supp. 2d 124, 137 (D.D.C. 2008). Harper Woods appeals the dismissal of its complaint, contending that the District Court erred in applying English law. Harper Woods also asserts that, if English law in fact bars this derivative suit, a public policy exception to the applicable choice of law rule applies, and that District of Columbia law should thus govern its suit.

We affirm the judgment of the District Court. First, we find that, pursuant to the District of Columbia's internal affairs doctrine, English law applies to this case. Second, we hold that Harper Woods has not shown that its complaint falls outside the rule of *Foss v. Harbottle*, (1843) 2 Hare 461, 67 E.R. 189, which establishes that the company, not a shareholder, is the proper plaintiff in a suit seeking redress for wrongs allegedly committed against the company. Moreover, we find that Harper Woods has failed to demonstrate that an exception to the rule of *Foss v. Harbottle* applies in this case. Finally, we hold that Harper Woods forfeited its claim that the District Court erred in dismissing its complaint with prejudice.

## I. BACKGROUND

BAE is a publicly owned corporation, incorporated in England and Wales, that operates in the United States through its subsidiary BAE Systems, Inc. Harper Woods is a pension fund that owns approximately 3500 American Depository Receipts ("ADR") representing shares of BAE. An ADR "represents ownership in a security issued by a foreign company in foreign markets." *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 656 n.2 (6th Cir. 2005).

On September 19, 2007, Harper Woods filed a shareholder derivative suit on behalf of BAE against BAE's board of directors, some of whom are also officers of the company, and 12 former officers and directors ("BAE defendants"). Harper Woods named BAE as a nominal defendant in the suit, as is typical with shareholder derivative suits. BAE Systems, Inc., the American subsidiary, was not named as a defendant.

Harper Woods alleged that the BAE defendants engaged in "intentional, reckless, and/or negligent breaches of their fiduciary duties of care, control and candor, involving illegal, improper, and/or *ultra vires* conduct, including causing BAE to violate the laws of the United States and international business codes and conventions . . . by making, or permitting to be made, improper and/or illegal bribes, kickbacks and other payments." Complaint ¶ 1, *reprinted in* 1 Joint Appendix ("J.A.") 27. According to Harper Woods, the BAE defendants "caused BAE to engage in a pattern and practice of making illegal and improper payments to secure contracts and false and misleading statements to conceal and cover them up," in violation of U.S. and United Kingdom law. *Id.* ¶ 5, 1 J.A. 29-30. Specifically, Harper Woods alleged that the BAE defendants "undertook illegal and improper conduct . . . in breach of their fiduciary duties to BAE," including paying more than $2 billion in bribes and kickbacks to Prince Bandar Bin Sultan of Saudi Arabia in order to obtain a large contract (known as the Al-Yamamah

4

contract) from the Saudi Arabian Ministry of Defense. *Id.* ¶¶ 6-8, 1 J.A. 30-32. Harper Woods further alleged that the "illegal or improper payments were secretly bargained for at the outset of the Al-Yamamah contract," and that Bandar received most of this money in Washington, D.C., via an account at Riggs Bank. *Id.* ¶¶ 8-9, 1 J.A. 31-32. Harper Woods sought damages (including punitive damages), an accounting by defendants, and an order directing BAE to undertake certain corporate governance reforms. *Id.* at 88-89, 1 J.A. 114-15.

The BAE defendants moved to dismiss on three grounds: lack of standing, *forum non conveniens*, and lack of personal jurisdiction. They submitted with their motion to dismiss a declaration from Martin Moore QC, a barrister in private practice in London appointed Queen's Counsel in 2002. Decl. of Martin Moore QC, ¶ 1 (Feb. 1, 2008), *reprinted in* 3 J.A. 755; *see also* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining Queen's Counsel as "an elite, senior-level barrister or advocate"). Mr. Moore was "asked to give [his] view as to the circumstances in which, as a matter of English law, a shareholder in an English incorporated company, such as BAE PLC, can bring proceedings derivatively on behalf of that company to remedy alleged harm caused to the company concerned." Moore Decl. ¶ 6, 3 J.A. 756. BAE also asked Mr. Moore "to consider from an English law standpoint whether the Plaintiff's allegations in this action are sufficient to establish its right to bring the claims asserted in the Complaint derivatively on behalf of BAE PLC against the named defendants." *Id.*

Mr. Moore concluded that Harper Woods could not bring its derivative action against the BAE defendants on behalf of BAE. *Id.* ¶ 80, 3 J.A. 775. He stated that the conduct of the BAE defendant directors came within the English rule of *Foss v. Harbottle*, which provides that the company is the proper plaintiff when a wrong is done to the company, whether by a director or by others. *Id.* ¶ 30, 3 J.A. 763. Though the wrongs

allegedly committed by the BAE defendants constituted breaches of regulatory, civil, or criminal law, the rule of *Foss v. Harbottle* concerns itself with alleged wrongs done *to* the company. *Id.* ¶¶ 37, 39, 3 J.A. 765. The "essence" of the alleged wrongs done to the company by the director-defendants consisted of "mismanagement and failure of oversight," according to Mr. Moore. *Id.* ¶ 17, 3 J.A. 759; *see also id.* ¶ 39, 3 J.A. 765-66. Since the directors' conduct could be ratified by a majority of shareholders, Mr. Moore stated that the company was the proper plaintiff in an action against the directors unless one of the exceptions to the *Foss* rule applied. *Id.* ¶¶ 39-40, 3 J.A. 766. Mr. Moore then declared that none of the exceptions applied. *See id.* ¶¶ 33, 49, 52, 57, 3 J.A. 764, 768-70. Finally, Mr. Moore described remedies for director misconduct, other than derivative suits. *Id.* ¶¶ 75-79, 3 J.A. 774-75. Under English law, these remedies include statutory rights to demand a shareholder meeting, to submit resolutions at the meeting, and to remove directors by ordinary resolution; to petition the High Court in England for relief on the grounds that the company's affairs have been or are conducted in a way that is unfairly prejudicial to shareholder interests; and in some circumstances to bring a claim directly against the directors accused of misconduct. *Id.* ¶¶ 76-78, 3 J.A. 774-75.

Opposing BAE's motion to dismiss, Harper Woods submitted a declaration from Paul Girolami QC, a barrister appointed Queen's Counsel in 2002 and appointed in 2006 to sit as a deputy High Court Judge in the Chancery Division of the High Court. Decl. of Paul Girolami QC, ¶¶ 1-2 (Apr. 23, 2008), *reprinted in* 5 J.A. 1282-83. Mr. Girolami declared, "I have been asked to give my views on, and in response to, the declaration of Mr. Moore. Like him I have made this declaration on the same basis as I would have done were this expert evidence given in English proceedings." *Id.* ¶ 4, 5 J.A. 1283. Additionally, Mr. Girolami stated, "It is not . . . for me to express views on what the Complaint should properly be

understood as alleging, nor on whether Mr. Moore's understanding is correct. But it does seem to me possible that his characterisation of the Complaint is too limited . . . ." *Id.* ¶ 5, 5 J.A. 1283-84. Expressing his views on English company law, Mr. Girolami agreed with Mr. Moore that, as a general matter, a complaint for mismanagement and failure of supervision falls within the rule barring shareholder derivative suits; he stated, however, that shareholders could bring a derivative suit for other breaches beyond failure of oversight if those breaches were incapable of ratification by a majority of shareholders. *Id.* ¶ 6(3)-(4), 5 J.A. 1284-85. In particular, Mr. Girolami asserted that, under English law, directors may commit breaches of duty, in addition to *ultra vires* acts, that are incapable of being ratified by shareholders. *Id.* ¶ 22, 5 J.A. 1293-94. Admitting that "there is a dearth of decided English cases in support of the point," Mr. Girolami explained that the leading treatises on English law state that illegal acts cannot be ratified by shareholders. *See id.* ¶¶ 22-23, 5 J.A. 1293-97.

The BAE defendants submitted a second declaration from Martin Moore with their reply to Harper Woods' opposition to the motion to dismiss. In this declaration, Mr. Moore convincingly showed "that the authoritative statements of the rule in *Foss v. Harbottle*, both old and new, do not suggest that there is an exception to the rule where conduct is illegal." Second Decl. of Martin Moore QC, ¶ 25 (May 23, 2008), *reprinted in* 5 J.A. 1458; *see also id.* ¶¶ 25-37, 5 J.A. 1458-63 (citing and discussing significant English authorities indicating that general illegality does not constitute an exception to *Foss v. Harbottle*).

The District Court conducted a hearing on the motion to dismiss on June 20, 2008. At the end of the hearing, the District Court invited supplemental submissions on the question of whether it is possible under U.K. law to ratify an illegal act. Tr. of Hearing (June 20, 2008) at 88, *reprinted in* 5 J.A. 1633. In

response, the BAE defendants filed a third declaration from Martin Moore stating that, under English law, an illegal act by a company director is ratifiable by shareholders. Supplemental Decl. of Martin Moore QC, ¶¶ 1-2 (June 27, 2008), *reprinted in* 5 J.A. 1469. Harper Woods filed a second declaration from Paul Girolami, reaching the opposite conclusion, declaring that shareholders cannot ratify breaches of duty by directors that consist of "applying the company's money in making illegal or improper payments" in violation of criminal law. Second Decl. of Paul Girolami QC ¶ 2 (July 7, 2008), *reprinted in* 5 J.A. 1474.

In its complaint, Harper Woods also named as defendants Prince Bandar Bin Sultan; PNC Financial Services Group, the legal successor to Riggs Bank following a merger; and Joseph, Robert, and Barbara Allbritton, three former executives and controlling shareholders of Riggs. PNC and the Allbrittons ("PNC defendants") jointly moved to dismiss the complaint, arguing that the BAE defendants' motion to dismiss should be granted based on lack of standing and therefore the aiding and abetting claims against the PNC defendants should be dismissed as well. PNC's and the Allbrittons' Joint Motion to Dismiss at 2 (Jan. 31, 2008), *reprinted in* 1 J.A. 131; Memorandum of Points and Authorities in Support of PNC's and the Allbrittons' Joint Motion to Dismiss at 9 & n.9 (Jan. 31, 2008), *reprinted in* 1 J.A. 145. PNC and the Albrittons additionally moved to dismiss on two alternate grounds: (1) failure to state a claim for aiding and abetting and (2) application of the *in pari delicto* defense to bar the claims against the PNC defendants. *See* PNC's and the Allbrittons' Joint Motion to Dismiss at 2, 1 J.A. 131.

The District Court, applying English law, granted the motion to dismiss, holding that Harper Woods lacked standing to bring the shareholder derivative suit. *Harper Woods*, 577 F. Supp. 2d at 137. The District Court applied the common law rule of *Foss v. Harbottle*, which governed shareholder derivative

suits until it was superseded by the U.K. Companies Act 2006. *See id.* at 131, 137. Harper Woods does not contest on appeal the District Court's finding that the 2006 Act does not apply retroactively to its complaint. *See id.* at 137.

Applying the rule of *Foss v. Harbottle*, the District Court found that shareholders may not bring derivative actions under English law except in limited circumstances, none of which is applicable in this case. *See Harper Woods*, 577 F. Supp. 2d at 131-36. The District Court dismissed the claims against the PNC defendants on the basis that plaintiffs who lack standing to bring a derivative claim for breach of fiduciary duty cannot pursue counts for aiding and abetting those breaches. *Id.* (citing *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 899 (D. Ariz. 2007)). The District Court thus did not address the defendants' motions to dismiss on grounds of *forum non conveniens*, lack of personal jurisdiction, failure to state a claim for aiding and abetting, and *in pari delicto*.

Appellant filed a timely appeal with this court challenging the District Court's dismissal of its complaint.

## II. ANALYSIS

### A. *Standard of Review*

This court reviews choice of law issues *de novo*. *Williams v. First Gov't Mortgage & Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999).

As a general matter, it is well understood that "the party invoking federal jurisdiction bears the burden of establishing" its standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Moreover, plaintiffs bear the burden of establishing standing to bring a derivative suit under English law, which applies to this case. *See Prudential Assurance Co. Ltd. v. Newman Indus. Ltd. (No. 2)*, [1982] Ch. 204, 221-22 (C.A.) (stating that plaintiff, before proceeding with a derivative

suit, must "establish a prima facie case . . . that the action falls within the proper boundaries of the exception to the rule in *Foss v. Harbottle*"); *see also* Tr. of Oral Argument at 11 (Plaintiff's counsel acknowledged, "I think that I've got the burden of indicating that we come within an exception to the rule of *Foss v. Harbottle*.").

The District Court's determination of an issue of foreign law is treated as a ruling on a question of law and our review is therefore *de novo*. FED. R. CIV. P. 44.1; *see also Ry. Labor Executives' Ass'n v. U.S. R.R. Ret. Bd.*, 749 F.2d 856, 860 & n.7 (D.C. Cir. 1984). Reviewing a motion to dismiss, this court accepts as true all of the factual allegations contained in the complaint and draws all inferences in favor of the nonmoving party. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156 (D.C. Cir. 2005). Though the court construes the complaint liberally in the plaintiff's favor, it need not accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## B. *The Applicable Law*

As the District Court correctly determined, English law applies to this case. A federal court sitting in diversity applies the conflict of law rules of the forum in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When a claim addresses matters of corporate governance or other internal affairs of a company, D.C. courts apply the law of the state of incorporation. *See Cowin v. Bresler*, 741 F.2d 410, 414 n.4 (D.C. Cir. 1984); *see also Labovitz v. Wash. Times Corp.*, 900 F. Supp. 500, 503 (D.D.C. 1995). As the District Court recognized, this internal affairs doctrine applies to corporations incorporated outside of the United States. *See Harper Woods*, 577 F. Supp. 2d at 129 (citing cases). BAE is incorporated in England and Wales, so English law applies to this shareholder derivative suit.

In an attempt to avoid an application of English law, Harper Woods argues that the District Court erred in failing to apply a public policy exception to the District of Columbia's internal affairs doctrine. *See Harper Woods*, 577 F. Supp. 2d. at 129; RESTATEMENT (SECOND) CONFLICT OF LAWS § 309 (1971). However, this exception is normally applied only where the laws of the jurisdiction of incorporation are immoral or unjust, *see, e.g.*, *Hausman v. Buckley*, 299 F.2d 696, 705 (2d Cir. 1962); *In re BP, PLC Derivative Litig.*, 507 F. Supp. 2d 302, 308-09 & n.19 (S.D.N.Y. 2007), or another state has a "more significant relationship" to the parties and transaction or overriding interest in the issue to be decided. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 309 (1971); *In re BP*, 507 F. Supp. 2d at 308-09 & n.20. The District Court concluded that neither rationale applies here. *See Harper Woods*, 577 F. Supp. 2d at 129-30. Harper Woods cites to nothing in local law that impugns this judgment, and we affirm it.

## C. *Plaintiff's Standing*

Harper Woods contends that the District Court erred in holding that it lacked standing under English law to pursue the shareholder derivative claim. Harper Woods advances two principal arguments: First, it contends that the complaint does not fall within the rule of *Foss v. Harbottle* and is therefore not barred by the rule; and, second, it asserts that even if the complaint is within the compass of *Foss*, the suit still may proceed because the complaint is covered by one of three exceptions to the *Foss* rule. We disagree on both counts.

We affirm the District Court's judgments that the complaint comes within the rule of *Foss v. Harbottle* and that none of the exceptions to the rule apply. We hold further that, even assuming Harper Woods' complaint can be characterized as alleging that the directors committed illegal acts rather than mere breaches of fiduciary duty, it still falls within the rule of *Foss v. Harbottle*. Harper Woods has not shown that

shareholders *cannot* ratify illegal acts of directors that are not *ultra vires*, so the conduct at issue does not fall outside the scope of the rule. The District Court did not reach this point because it characterized Harper Woods' complaint as alleging failure of supervision and oversight, which both parties' experts agreed could be ratified under English law. *See Harper Woods*, 577 F. Supp. 2d at 132-33 & n.11; *see also* Moore Decl. ¶ 38, 3 J.A. 765; Girolami Decl. ¶ 6(3), 5 J.A. 1284-85.

 1. *The Rule of* Foss v. Harbottle

Prior to the passage of the U.K. Companies Act 2006, English law did not permit shareholder derivative suits except in the very limited circumstances outlined in *Foss v. Harbottle*. *See* (1843) 2 Hare 461, 67 E.R. 189. English courts describe the rule of *Foss v. Harbottle* as having five components. First, the *Foss* rule provides that the proper plaintiff in an action regarding a wrong allegedly done to a company is *prima facie* the company itself. *See Prudential*, [1982] Ch. at 210; *Edwards v. Halliwell*, [1950] 2 All E.R. 1064, 1066 (C.A.). Second, no individual shareholder can maintain an action if the alleged wrong is capable of ratification by a simple majority of shareholders. *Prudential*, [1982] Ch. at 210; *Edwards*, [1950] 2 All E.R. at 1066. Third, where the alleged wrong is *ultra vires*, the rule has no application because a majority of shareholders cannot ratify the transaction (the *ultra vires* exception). *Prudential*, [1982] Ch. at 210; *Edwards*, [1950] 2 All E.R. at 1067; *see also* Moore Decl. ¶ 33.1, 3 J.A. 765. Fourth, where the wrongdoers themselves are in control of the company and the alleged action amounts to fraud, the rule is relaxed to allow the minority to sue (the wrongdoer control or "fraud on the minority" exception). *Prudential*, [1982] Ch. at 211; *Edwards*, [1950] 2 All E.R. at 1067; *see also* Moore Decl. ¶ 33.3, 3 J.A. 765; Girolami Decl. ¶ 29, 5 J.A. 1301. Fifth, the *Foss* rule does not prevent a shareholder from suing if the alleged wrong could be validly sanctioned only by a special

majority (the super majority exception). *Prudential*, [1982] Ch. at 210-11; *Edwards*, [1950] 2 All E.R. at 1067; *see also* Moore Decl. ¶ 33.2, 3 J.A. 765; Girolami Decl. ¶ 13, 5 J.A. 1289.

As the District Court recognized, a court applying the *Foss* rule must first determine whether the alleged wrongdoing is capable of ratification by a simple majority of shareholders. *Harper Woods*, 577 F. Supp. 2d at 132 (citing Moore Decl. ¶ 36, 3 J.A. 765). The District Court was correct to conclude that while "full and frank" disclosure of the matters to be ratified may be necessary for an actual shareholder ratification to be valid, such disclosure is irrelevant to the operative question under *Foss v. Harbottle*, *viz.*, whether conduct is in principle capable of ratification. *See id.* at 133 (citing Moore Second Decl. ¶¶ 48-49, 5 J.A. 1465-66); *see also Edwards*, [1950] 2 All E.R. at 1066 (explaining that "where the alleged wrong is a transaction which *might be made binding* on the company . . . by a simple majority of the members, no individual member of the company is allowed to maintain an action" because no wrong has been done to the company if a majority approves the transaction and the company itself can bring suit if a majority of shareholders do not approve) (emphasis added). If the actions alleged in the complaint are capable of ratification, a shareholder may not pursue a derivative action on behalf of the corporation unless one of the exceptions to the rule of *Foss v. Harbottle* applies. *Harper Woods*, 577 F. Supp. 2d at 132 (citing Moore Decl. ¶ 36, 3 J.A. 765).

2. *Ratification of Illegal Acts*

The District Court found that "the essence of Plaintiff's Complaint" is "[f]ailure of supervision and oversight." *Harper Woods*, 577 F. Supp. 2d at 132 n.11. The District Court explained that the wrongs allegedly done to the company that gave rise to the derivative suit were breaches of fiduciary duty, not breaches of regulatory, civil, or criminal law. *Id.* at 132. The parties' experts agree that breaches of fiduciary duty for

mismanagement and failure of supervision are capable of ratification by shareholders. *See* Moore Decl. ¶ 39, 3 J.A. 765-66; Girolami Decl. ¶ 6(3), 5 J.A. 1284-85. Ratification would render the wrongful act – the failure of supervision and oversight – no longer a breach of duty to the company. *Harper Woods*, 577 F. Supp. 2d at 133 (citing Moore Supp. Decl. ¶ 4, 5 J.A. 1469-70).

Harper Woods seemingly disputes this characterization of its complaint, noting that the District Court "accepted Mr. Moore's narrow characterization" of the complaint instead of accepting as true all material allegations and construing the complaint in the light most favorable to Harper Woods. *See* Appellant's Br. at 16-17 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). It is at best questionable whether the complaint alleges anything more than breaches of fiduciary duty. The complaint asserts, in conclusory terms, that the directors "caused BAE to engage in a pattern and practice of making illegal and improper payments" and made "false and misleading statements to conceal and cover up [the payments]." Complaint ¶ 5, 1 J.A. 29-30; *see also id.* ¶ 8, 1 J.A. 30-31 (alleging that BAE defendants "undertook illegal and improper conduct . . . including paying bribes or kickbacks" to Prince Bandar); *id.* ¶ 113, 1 J.A. 97 (same). These unsupported assertions are insufficient to charge the defendant directors with illegal acts. Although we must construe the complaint liberally in Harper Woods' favor, we need not accept legal conclusions cast in the form of factual allegations. *See Kowal*, 16 F.3d at 1276. Our skepticism regarding the frailties of the complaint was fueled during oral argument when counsel for Harper Woods acknowledged that the complaint focuses on "a breach of fiduciary duty, a failure to supervise, and in all likelihood, a deliberate turning of a blind eye." Tr. of Oral Argument at 7.

In the end analysis, however, Harper Woods' arguments regarding the breadth of the complaint are much ado about

nothing. Even if Harper Woods' complaint can be construed as an action against the directors for committing illegal acts, Harper Woods has not convincingly demonstrated that English law finds illegal acts incapable of ratification by shareholders. At oral argument, Harper Woods relied primarily on a 1915 Irish case, *Cockburn v. Newbridge Sanitary Steam Laundry Co. Ltd.*, [1915] 1 I.R. 237 (C.A.). Although the *Cockburn* case recognized that "[i]llegality and ultra vires are not interchangeable terms," the court in fact conflated the two, noting that "it is difficult, if not impossible, to conceive a case in which a company can do an illegal act . . . and act within its powers." *Id.* at 254. The court then discussed a case involving an *ultra vires* act "unaffected by criminality," *id.*, and concluded that the *ultra vires* argument is stronger "when the whole matter is tainted with criminality." *Id.* at 255. The court held that, because the agreement entered into by the director-defendant in *Cockburn* was likely to be illegal, "[i]t would, accordingly, have been quite beyond the powers of the company to have entered into it." *Id.* The *Cockburn* decision is perplexing, to say the least, in part because it can be read as nothing more than an application of the *ultra vires* exception to the *Foss* rule. In other words, whether or not "illegal," the court found that the alleged wrongdoing in *Cockburn* undoubtedly involved an *ultra vires* action.

In his second declaration, Mr. Moore dismisses *Cockburn* as "an Irish case" that "is not binding on the English courts." Moore Second Decl. ¶ 27(c), 5 J.A. 1459. Mr. Moore makes a more compelling argument, however, when he points out that "the reasoning underlying the decision [in *Cockburn*] is fundamentally incompatible with important and binding English authority, in particular *Rolled Steel Prods. (Holdings) Ltd. v. British Steel Corp.*, [1986] Ch. 246[, 297 (C.A.)] and *Arab Monetary Fund v. Hashim*, [1993] 1 Lloyd's L. Rep. 543[, 569 (Q.B.)]." *Id.* In *Rolled Steel*, the court stated that "the phrase 'ultra vires' in the context of company law should for the future

be rigidly confined to describing acts which are beyond the corporate capacity of a company." *Rolled Steel*, [1986] Ch. at 297 (Slade, L.J.). In other words, the court made it clear that "a company has capacity to carry out a transaction which falls within its objects even though carried out by wrongful exercise of its powers." *Id.* at 303 (Browne-Wilkinson, L.J.).

The Law Commission's Consultation Paper on Shareholder Remedies, cited by Mr. Moore, confirms this conclusion, stating that "where an act which a company commits is illegal it is not also ultra vires unless it is also beyond the capacity it is given by the Companies Acts." *See* Moore Second Decl. ¶ 25(c), 5 J.A. 1458; *see also* THE LAW COMMISSION, SHAREHOLDER REMEDIES: A CONSULTATION PAPER ¶ 4.21 (The Stationery Office 1996) [hereinafter LAW COMMISSION CONSULTATION PAPER]. The Law Commission Consultation Paper continues, "The description of the rule in *Foss v*[.] *Harbottle* [previously described in the consultation paper] applies to illegal acts which are ultra vires in this sense. Where the company proposes to do some other illegal act, a member may bring proceedings to restrain the company from so acting, but it is doubtful whether he can bring proceedings to recover damages for any loss which the company may suffer as a result without showing a fraud on the minority." LAW COMMISSION CONSULTATION PAPER at ¶ 4.21. Harper Woods' expert, Mr. Girolami, cites this language to show that the point is not free from doubt and that "the Law Commission report does *not* espouse Mr. Moore's apparently doubt-free view that all illegal acts can be ratified by a simple majority." Girolami Second Decl. ¶ 6, 5 J.A. 1476-77. But Plaintiff has the burden of demonstrating standing to bring the derivative suit, *see Prudential*, [1982] Ch. at 221-22, and Harper Woods has not demonstrated that illegal acts cannot be ratified.

Harper Woods also relies on treatises to support its claim that illegal acts cannot be ratified. However, only two treatises cite English cases in support of the proposition that the *Foss* rule

does not apply if the alleged wrong is illegal or criminal. *See* Girolami Decl. ¶ 23(c), (f), 5 J.A. 1295, 1296-97. Only one of the cases cited – *Powell v. Kempton Park Racecourse*, [1987] 2 Q.B. 242 (C.A.) – concerns a criminally illegal action of the type alleged by Harper Woods. The other three cases do not concern criminally illegal conduct. *See Drown v. Gaumont-British Picture Corp., Ltd.*, [1937] Ch. 402, 402 (shareholder sued to restrain company and its directors from paying a dividend out of capital); *Baillie v. Oriental Tel. and Elec. Co. Ltd.*, [1915] 1 Ch. 503, 504, 515 (C.A.) (shareholder brought suit to have declared invalid certain special resolutions that he alleged were not validly enacted and thus not binding on the company); *Const v. Harris*, (1824) 37 E.R. 1191, 1191, 1196 (Ch.) (member of a partnership brought suit to compel other partners to act according to a covenant previously entered into by the partnership).

As for *Kempton Park*, the plaintiffs in that case sought an injunction to restrain the company from knowingly permitting illegal activities in an enclosure at the racetrack in violation of the Betting Act, 1853. *See Powell v. Kempton Park Racecourse*, [1987] 2 Q.B. 242, 253 (C.A.). The case concerned whether the alleged activity was in fact illegal, and the defendants did not argue that the court lacked jurisdiction to enjoin the defendants from committing a criminal act. *Id.* at 260 (Lindley, L.J.); *id.* at 268 (Lopes, L.J.). The Law Commission acknowledges that a shareholder may bring suit to restrain the company from acting in a certain way, LAW COMMISSION CONSULTATION PAPER at ¶¶ 2.29, 4.22, a type of suit that differs from a shareholder derivative suit and does not fall within the rule of *Foss v. Harbottle*. *See Smith v. Croft (No. 2)*, [1988] Ch. 114, 167, 177; *see also* LAW COMMISSION CONSULTATION PAPER at ¶ 4.22. The aforecited *Drown* case is also a suit seeking to restrain a company and its directors from taking a certain action, although it involves the payment of a dividend rather than criminally illegal conduct. *See Drown*, [1937] Ch. at 402.

Harper Woods has cited no case in which an English court has authoritatively held that a criminally illegal, but not *ultra vires*, act is outside the rule of *Foss v. Harbottle* and therefore a shareholder derivative suit may proceed. Mr. Girolami cites an Australian case, *Australian Agric. Co. v. Oatmont Pty Ltd.*, (1992) 8 A.C.S.R. 255, in support of his claim that shareholder derivative actions may be permissible in cases involving nothing more than alleged criminal illegalities. But the decision simply cannot carry the weight of authority that Harper Woods would like. In his second declaration, Mr. Moore aptly disposes of the Australian case:

> *Australian Agricultural Co. v. Oatmont Pty* [1992] is an Australian case, again not binding on the English courts, and should be treated with caution in the light of the Australian courts' less restrictive approach to the rule in *Foss v. Harbottle*. Further, it is not clear that the comments quoted by Mr. Girolami at his paragraph 25 refer to an exception to the rule at all. It is clear that the court considers that causing the company to act illegally would be a breach of the directors' duties, but all that is said is that this "could well give rise" to a derivative action. It is not suggested that such an action could necessarily be pursued in the absence of one or more of the established exceptions to the rule in *Foss v. Harbottle* (in particular, fraud on the minority).

Moore Second Decl. ¶ 27(d), 5 J.A. 1459-60.

Because Harper Woods has failed to demonstrate that, under authoritative English law, the alleged activities of the defendants – whether construed as breach of fiduciary duties or illegal acts – are incapable of ratification, the complaint falls within the rule of *Foss v. Harbottle* and the company itself is the proper plaintiff unless an exception to the rule applies.

3.    *Exceptions to the Rule of* Foss v. Harbottle

Harper Woods contends that three exceptions to the *Foss* rule bring its complaint outside the purview of the rule:  the *ultra vires* exception, the wrongdoer control exception, and the interests of justice exception.  The District Court correctly explained why these exceptions do not apply, *see Harper Woods*, 577 F. Supp. 2d at 133-36 & n.13, and we affirm.

The *ultra vires* exception does not apply because Harper Woods did not allege *ultra vires* conduct.  In English law, an *ultra vires* act is an act "beyond the corporate capacity of a company."  *Rolled Steel*, [1986] Ch. at 297.  Whether conduct is *ultra vires* thus depends upon whether a company is *capable* of performing the act, as set forth in the company's memorandum of association.  *Id.* at 295.  Harper Woods did not allege that BAE lacked the corporate capacity to make payments to Bandar.  Furthermore, at least one English court has held that payment of a bribe is not an *ultra vires* act where the company's memorandum authorizes it to provide compensation in return for services rendered in the conduct of its business.  *See Arab Monetary Fund*, [1993] 1 Lloyd's Rep. at 569.

The wrongdoer control exception also does not apply.  This exception may be applicable when director-defendants have allegedly committed "fraud" by using their powers or positions at the company to benefit themselves at the company's expense.  Moore Decl. ¶ 53, 3 J.A. 769; Girolami Decl. ¶ 29, 5 J.A. 1301.  However, shareholder-plaintiffs may invoke this exception only when the director-defendants have been in "control" of the company.  *See* Moore Decl. ¶¶ 54-55, 3 J.A. 769-70; Girolami Decl. ¶ 31, 5 J.A. 1302.  Harper Woods did not allege that the BAE defendants benefitted personally from any fraud, as both parties' experts agree must occur for this exception to apply.  Moore Decl. ¶ 53, 3 J.A. 769; Girolami Decl. ¶ 29, 5 J.A. 1301.  Harper Woods alleged only that BAE's directors and top managers held onto their "prestigious and lucrative BAE

positions" by representing that BAE was a "highly ethical law abiding corporation . . . achieving very substantial profits due to the skills of its top managers," while in reality increasing profits through illegal activities. Complaint ¶¶ 3-4, 1 J.A. 28-29. As the District Court explained, these allegations do not constitute the necessary self-dealing by a director sufficient to invoke the wrongdoer control exception. *See Harper Woods*, 577 F. Supp. 2d at 135. Because Harper Woods did not allege fraud, this court need not reach the "control prong" of the wrongdoer control exception. *See id.* at 136.

Finally, Harper Woods has not proven the existence of an "interests of justice" exception to the *Foss* rule. Even if *Foss v. Harbottle* itself recognizes such an exception, Harper Woods has not demonstrated that it has no other remedy to rectify its injury. *See Foss*, 2 Hare at 492, 67 E.R. at 203 ("claims of justice" allow a suit to go forward where "no adequate remedy" exists to rectify injury). BAE's expert, Mr. Moore, set forth a number of remedies for director misconduct apart from a shareholder derivative suit. *See* Moore Decl. ¶¶ 75-79, 3 J.A. 774-75. That Harper Woods prefers a derivative suit to other available remedies does not mean that "no adequate remedy" exists.

**D.** *Dismissal With Prejudice*

Finally, we hold that Harper Woods may not pursue its claim that the District Court erred in dismissing the complaint with prejudice, because this claim has been forfeited. When a plaintiff fails to seek leave from the District Court to amend its complaint, either before or after its complaint is dismissed, it forfeits the right to seek leave to amend on appeal. *See Gov't of Guam v. Am. President Lines*, 28 F.3d 142, 150-51 (D.C. Cir. 1994); *see also Drake v. FAA*, 291 F.3d 59, 72 (D.C. Cir. 2002). This rule applies where, as here, the court of appeals affirms dismissal of the complaint. *Drake*, 291 F.3d at 72 (citing *United*

*States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 552-53 (D.C. Cir. 2002)).

Harper Woods relies primarily on two cases that are inapposite, *Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006), and *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) (per curiam). *See* Appellant Br. at 27-28, 51. In those cases, the plaintiffs sought leave from the District Court to amend their complaints by filing Rule 59(e) motions after their complaints were dismissed. *See Belizan*, 434 F.3d at 581; *Firestone*, 76 F.3d at 1208. Harper Woods never moved to amend its complaint in the District Court. At most, in its opposition to the PNC defendants' motion to dismiss, Harper Woods made a brief request for leave to amend if the District Court were to dismiss any of its claims and briefly mentioned amendment with respect to its claims against the BAE defendants. *See* Plaintiff's Consolidated Opposition to Defendants' Motions to Dismiss at 7, 82, *reprinted in* 3 J.A. 842, 917 (request to amend to add allegations against PNC defendants); *id.* at 60, 3 J.A. 895 (briefly mentioning facts alleged "or pled through amendment" with respect to the BAE defendants). "'[A] bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought – does not constitute'" a motion to amend. *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (quoting *Kowal*, 16 F.3d at 1280). We therefore find that Harper Woods did not move for leave to amend in the District Court and hold that it cannot now belatedly seek a remand from this court to amend its complaint.

## E. *Dismissal of Aiding and Abetting Claims*

The District Court dismissed the claims against the PNC defendants on the ground that plaintiffs who lack standing to bring a derivative claim for breach of fiduciary duty cannot pursue counts for aiding and abetting those breaches. *See Mann*, 483 F. Supp. 2d at 899. We affirm this judgment for it is

eminently sound and Harper Woods cites no good authority to refute it. Indeed, Harper Woods did not challenge the District Court's judgment in its opening brief to this court. Nor did Harper Woods challenge this specific point in its reply brief. Even if it had raised the matter in its reply brief, that would have been too late to preserve the issue for appellate review. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (citing *Rollins Envtl. Servs. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991)). It is clear here that the judgment of the District Court admits of no viable challenge.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court.